Argued September 23, affirmed October 18, 1927.

## L. B. MENEFEE LUMBER CO. *v.* L. W. Mac-DONALD et al.

(260 Pac. 444.)

**Principal and Agent—Act of Agent may be Charged as Act of Principal.**

1. In seller's suit for price of lumber in which purchaser counterclaimed for lumber received by seller from purchaser's agent, it was unnesessary to allege agency, since act of agent can be charged as act of principal.

**Pleading—Allegations of Duty Owed by Defendant, Breach Thereof, and Injury to Plaintiff are Generally Necessary to State Cause of Action.**

2. Generally, to state cause of action, it is necessary to allege duty owed by defendant to plaintiff, breach of such duty, and injury to plaintiff resulting therefrom.

**Pleading—All Elements of Cause of Action must be Contained in Counterclaim.**

3. Counterclaim must contain all elements of a cause of action.

––––––––––

2. See 1 R. C. L. 316.

**Pleading—Complaint Should Allege Nonpayment, Where Breach Consists of Failure to Pay Money.**

4.  Where breach by defendant of duty owing to plaintiff consists of failure to pay money, complaint should allege nonpayment.

**Payment—Payment is Affirmative Defense, and Evidence Thereof is not Admissible Under General Denial.**

5.  Payment is affirmative defense, and, generally, evidence thereof is not admissible under general denial.

**Pleading—Failure to Aver Nonpayment in Purchaser's Counterclaim for Lumber Received by Seller, Undiscovered Until After Verdict and Appeal Denied in Reply and Developed by Evidence, Held not Fatal (Const., Art. VII, § 3c).**

6.  In purchaser's counterclaim for value of lumber received by seller from purchaser's agent, where seller's reply to counterclaim alleged payment to agent for lumber received, and issue of payment was fully developed by evidence without objection, failure of counterclaim to aver plaintiff's breach of duty to pay for lumber, not discovered until after verdict and appeal, *held* not fatal, in view of Constitution, Article VII, Section 3c.

**Action—Owner may Sue Wrongdoer Deriving Benefit from Conversion in Assumpsit for Value of Benefit Received.**

7.  Where tort-feasor has derived benefit from conversion, owner of property may sue 'wrongdoer in *assumpsit* for value of benefit received.

**Assumpsit, Action of—Recovery in Assumpsit Against Wrongdoer Requires Proof of Commission of Tort and Receipt of Benefit by Wrongdoer.**

8.  Owner of property to recover from wrongdoer in *assumpsit* must establish commission of tort and receipt of benefit by wrongdoer.

**Appeal and Error—Court's Shifting Theory of Trial from Tort to Assumpsit in Accordance With Defendant's Contention Held not Prejudicial to Plaintiff Claiming Rightful Possession of Property and Payment.**

9.  In purchaser's counterclaim for lumber received by sellers from purchaser's agent, shifting by court from position that plaintiff's possession of lumber was wrongful to position that possession was rightful, and accompanied by promise to pay reasonable value of lumber in accordance with purchaser's election to sue in *assumpsit*, was not prejudicial to seller, who claimed from outset that purchaser's agent had authority to deliver lumber and receive payment.

**Pleading—Pleader Should be Allowed Liberality of Expression to Make Provision for Uncertainty of Proof, if No Unfair Advantage is Taken of Opponent (Or. L., § 85).**

10.  Under Section 85, Or. L., requiring courts to construe pleadings liberally, court should allow pleader a liberal looseness of ex-

5.  See 21 R. C. L. 116.
7.  See 2 R. C. L. 755.

pression so as to make provision for uncertainty of proof, providing that no unfair advantage is taken of opponent.

**Appeal and Error—Plaintiff, not Seeking Leave to Amend or Offer Additional Evidence, Held not Prejudiced by Court's Construction of Pleadings as Suit in Assumpsit not Tort in Accordance With Defendant's Election.**

11. Where plaintiff did not ask leave to amend or opportunity to offer more evidence after court construed defendant's counterclaim as pleading cause of action in *assumpsit* and not in tort in accordance with election by defendant to sue in *assumpsit*, plaintiff was not thereby misled.

**Pleading—Pleader Alleging Two Theories may Avail Himself of Minor Theory When Major Theory Fails, if It Works No Injustice to Opponent.**

12. Where two theories of action are pleaded, and major theory fails, pleader may avail himself of minor theory, if adoption thereof works no injustice to opponent.

**Pleading—Counterclaim for Lumber Alleging Both Conversion and Promise to Pay Held Properly Submitted on Latter Theory, in Accordance With Claimant's Election to Sue in Assumpsit.**

13. Where purchaser, in seller's suit for lumber counterclaimed for value of lumber received by seller from purchaser's agent alleging both conversion by seller and promise to pay reasonable value of lumber received, it was proper for court to submit case to jury on the theory that plaintiff received lumber under promise to pay for same in accordance with purchaser's election to sue in *assumpsit*.

**Sales—Contract Between Purchaser and Agent Known to Seller Held Admissible in Purchaser's Counterclaim for Value of Lumber Received by Seller from Agent.**

14. Where purchaser, in seller's suit for lumber, counterclaimed for value of lumber received by seller from purchaser's agent, contract between purchaser and agent, retaining title to lumber in purchaser, made with full knowledge of seller, was material and admissible in evidence.

**Evidence—Seller, Sued for Lumber Received from Purchaser's Agent, in Possession of Contract Between Purchaser and Agent, Held Chargeable With Notice of Its Legal Effect.**

15. Where seller, sued on counterclaim by purchaser for lumber received by seller from purchaser's agent, was in possession of copy of contract between purchaser and agent, and had knowledge of manner in which purchaser and agent were operating, seller was charged with notice of legal effect of contract.

**Evidence—Opinion Testimony by Witness With Sixteen Years' Lumbering Experience, and Familiar With Lumber Involved, as to Reasonable Value of Lumber Held Admissible.**

16. In counterclaim to recover value of lumber, opinion testimony by witness having sixteen years of experience in lumber busi-

ness, and familiar with lumber involved in controversy, as to reasonable value of lumber at certain time, was admissible.

**Evidence—Testimony by Witness, Giving Opinion as to Reasonable Value of Lumber, on Matters Which He Considered in Forming Opinion, Held Properly Admitted.**

17. In suit involving value of lumber, testimony by witness, giving his opinion as to reasonable value of lumber in controversy, on matters which he took into consideration in forming opinion, *held* properly admitted.

**Evidence—Evidence of Average Prices Considered by Witness Giving Opinion as to Reasonable Value of Lumber Held Admissible.**

18. In suit involving value of lumber, evidence of average prices calculated by witness giving opinion as to reasonable value of lumber was admissible for purposes of showing matters taken into consideration by witness in forming opinion of value.

**Evidence—Data on Which Opinion of Witness is Based is Admissible.**

19. Person offering witness whose opinion is admissible may have witness relate events and data on which opinion is based, so that jury may know what is back of opinion.

**Trial—Court's Statement Indicating That Evidence of Data on Which Witness Based Opinion of Value of Lumber was Admissible for Purpose Other Than Showing Basis for Opinion Held not Error Under Evidence.**

20. In suit involving value of lumber, statement by judge that testimony of data on which witness based opinion as to value of lumber was offered solely to show what value might be, and not that any particular amount or kind of lumber was received, though it might be construed as statement that evidence was admitted for purpose other than showing foundation of witness' opinion, was not error under evidence.

**Trial—Objection to Opinion Evidence, Based on Improper Data, Should be Taken by Motion to Strike, and not by Objection, When Witness Explains Basis for Opinion.**

21. Where opinion of witness as to reasonable value of lumber in controversy was based largely on calculations of average values, objection to evidence should have been taken by motion to strike out opinion as not based on proper data, and not by objection, when witness undertakes to explain manner of arriving at opinion.

**Appeal and Error—Testimony as to Grades and Prices of Lumber in Controversy, made by Witness After Brief Calculations from Paper Which Jury Could Make for Itself, Though Erroneous, was Harmless.**

22. In suit involving value of lumber, testimony as to various grades of lumber and average prices received by agent of claim-

ant, made by witness having no personal knowledge thereof from paper, after making brief calculations which jury itself could make, though erroneous, was harmless.

Actions, 1 C. J., p. 1031, n. 89, p. 1032, n. 98, 4, 8, 12, p. 1033, n. 24, 26, p. 1035, n. 36, p. 1036, n. 48 New.
Agency, 2 C. J., p. 904, n. 76.
Appeal and Error, 4 C. J., p. 649, n. 36, p. 650, n. 37, p. 662, n. 82, p. 969, n. 56, p. 975, n. 88, p. 982, n. 44, p. 983, n. 59, p. 1168, n. 98, p. 1172, n. 62.
Contracts, 13 C. J., p. 734, n. 26, 28, p. 736, n. 71.
Evidence, 22 C. J., p. 573, n. 34, p. 575, n. 49, p. 576, n. 51, p. 579, n. 84, p. 580, n. 86, p. 693, n. 97, p. 694, n. 22, p. 857, n. 73, p. 858, n. 79.
Payment, 30 Cyc., p. 1252, n. 99, p. 1253, n. 11, p. 1262, n. 5.
Pleading, 31 Cyc., p. 79, n. 4, p. 101, n. 92, p. 103, n. 17, p. 121, n. 93, p. 122, n. 2, p. 227, n. 85, p. 228, n. 89, p. 675, n. 36, p. 702, n. 33, p. 704, n. 40, p. 754, n. 69.
Trial, 38 Cyc., p. 1401, n. 16, p. 1517, n. 61, p. 1778, n. 73, p. 1779, n. 76.

From Multnomah: LOUIS P. HEWITT, Judge.

Department 1.

The complaint sought the recovery of the value of some quantities of lumber sold by the plaintiff to the defendants. It was stipulated between the parties that the plaintiff was entitled to judgment for $10,838.03 upon these items; hence, we need not concern ourselves with the complaint. It is the allegations of the counterclaim and the matters therein set forth, and denied in the reply, that are called to our attention.

Omitting the formal parts, the counterclaim sets forth:

"That on and between the 31st day of August, 1923, and the 1st day of April, 1924, the plaintiff took and received 524,899 feet of lumber which was the property of and belonged to the defendants; that said plaintiff sold, used, appropriated and converted said lumber and the whole thereof to its own use and benefit; that the defendants were the owners of said lumber and have demanded the return of same from

the plaintiff or the value thereof but said plaintiff has refused to return said lumber to the defendants or pay for same. That the plaintiff took and received said lumber and appropriated it to its own use and benefit, thereby said plaintiff promised to pay the defendant a reasonable value for same; * * Said defendants have elected and hereby elect to bring this counterclaim and action against plaintiff in assumpsit and recover the reasonable value of said lumber upon the implied promise of plaintiff to pay for same.''

The counterclaim alleged that the value of this lumber was $14,392.75, the asked for judgment against the plaintiff in that amount. The reply denied these allegations and alleged an estoppel which, briefly stated, is as follows: That, if the defendants had any interest in this lumber, they permitted the lumber to remain in the possession of the Hubbard Lumber Company under such circumstances that the plaintiff was led to believe that the Hubbard Company was the owner of it; that the defendants dealt with the Hubbard Company as owner of this lumber and paid the Hubbard Company in full for all lumber received by the plaintiff; and that the defendants, knowing that the plaintiff was dealing with the Hubbard Company as owner, failed to advise the plaintiff of their interest.

At the conclusion of the evidence, the plaintiff moved for a directed verdict upon the ground that there was no evidence that the plaintiff had converted to its use any of defendants' lumber, and that, since the parties had stipulated that $10,838.03 was due the plaintiff by reason of the transactions set forth in the complaint, the plaintiff was entitled to judgment.

The court ruled that there was no evidence of any conversion; this ruling apparently was based on its

finding that the plaintiff came rightfully into possession of defendants' lumber; that defendants had made no demand on the plaintiff for a return of it, and that a demand was essential to change a rightful possession into an act of conversion. The court thereupon informed counsel that the case would not be submitted to the jury as one of conversion, but, believing that the counterclaim could be construed as one of *assumpsit* for merchandise sold and delivered on a *quantum valebat,* denied the motion for a directed verdict.

In instructing the jury, the court refused to give plaintiff's requested instructions upon the subject of conversion and instructed the jury that the facts did not warrant a finding of conversion. It submitted the case to the jury as one wherein the defendants alleged the Hubbard Lumber Company rightfully delivered to the plaintiff a quantity of defendants' lumber, which the plaintiff accepted and promised to pay for but had failed to do so.

Following the court's ruling upon its construction of the theory of the case, both sides excepted, and the defendants asked leave to amend their pleadings; this request was denied. The jury decided the issues upon the counterclaim for the defendants. Plaintiff appealed. AFFIRMED.

For appellant there was a brief and oral argument by *Mr. W. B. Shively.*

For respondents there was a brief over the names of *Mr. J. G. Arnold* and *Messrs. Jaureguy & Tooze,* with an oral argument by *Mr. Nicholas Jaureguy.*

ROSSMAN, J.—The question arises whether the allegations of the counterclaim are sufficient to state the cause of action which the court submitted to the

jury.  Defendants suggest that we omit all portions
of the counterclaim referring to conversion as sur-
plusage, and that enough will remain to state a cause
of action in *assumpsit* based upon a sale of merchan-
dise.  As suggested in defendants' brief, the counter-
claim will read as follows:

"That on or between the 31st day of August, 1923,
and the first day of April, 1924, the plaintiff took and
received 524,899 feet of lumber, the property of and
belonging to the defendants; that said plaintiff sold,
used * * lumber and the whole thereof to its own use
and benefit * *  ; that the plaintiff took and received
said lumber and appropriated it to its own use and
benefit, thereby said plaintiff promised to pay the said
defendants a reasonable value for same. * *

"Said defendants have elected and hereby elect to
bring this counterclaim and action against plaintiff in
*assumpsit* to recover the reasonable value of said
lumber, upon the implied promise of the plaintiff to
pay for same."

No motion or demurrer was filed against the an-
swer; no motion to elect was made during the course
of the trial.  As to the pleadings in their shrunken
form, counsel for plaintiff, in his reply brief, states:

" * * we do here and now demur to respondents'
counterclaim on the ground and for the reason that it,
as expurgated, does not state facts sufficient to consti-
tute a cause of action, defense or counterclaim."

1. It was unnecessary to allege the agency of the
Hubbard Lumber Company.  The act of the agent
can be charged as the act of the principal.  2 C. J.
904; *Kitchen* v. *Holmes,* 42 Or. 252  (70 Pac. 830);
*Interior Warehouse Co.* v. *Dunn,* 80 Or. 528 (157 Pac.
806).

2, 3. The counterclaim sets forth all of the elements
suggested in *Reichle* v. *Willamette Tribe No. 6,* 118
Or. 357 (246 Pac. 214).  But it will be noticed that it

fails to aver a breach of plaintiff's duty to pay for the lumber; that is, nonpayment of the contractual obligation is not alleged. Ordinarily, in order to state a cause of action, it is necessary to allege a duty owed by the defendants to the plaintiff, a breach of that duty, and an injury to the plaintiff as a result thereof. The first and the third of these elements are set forth in the complaint in its expurgated form, but the second, a breach, is missing. A counterclaim must, of course, contain all of the elements of a cause of action: *Chance* v. *Carter,* 81 Or. 229 (158 Pac. 947); Bancroft's Code Pleading, § 386.

4–6. Generally, where the breach consists of the failure to pay money, the complaint should allege nonpayment: *Lent* v. *New York & Mass. R. Co.,* 130 N. Y. 504 (29 N. E. 988); *Hudelson* v. *First National Bank,* 51 Neb. 557 (71 N. W. 304); 4 Ency. Pl. & Pr. 942; 13 C. J. 734; Pomeroy's Code Remedies, p. 683, note. But while the plaintiff must allege nonpayment in order to aver the breach, payment by a peculiar anomaly of law is an affirmative defense, so that generally evidence of payment is not admissible under a general denial. The authorities are collected and analyzed in 10 Cornell Law Quarterly, 269. In this case, however, the reply alleged payment to the Hubbard Lumber Company for all lumber received by the plaintiff. The issue of payment and of nonpayment was gone into fully in the evidence without objection. A technical oversight of this character remaining undiscovered until after the verdict and appeal should not be fatal in view of the provisions of Article VII, Section 3c, of our Constitution, page 131, Or. L. We shall, therefore, regard it no further.

7. But counsel for the plaintiff contends that, even if it were possible to place upon the complaint the

construction adopted by the court below, the defendants should not be permitted to shift from tort into contract as the foundation of their case. The counterclaim itself notifies the plaintiff that the defendants expected to reply upon *assumpsit;* it avers that the defendants waived the tort and reply upon the implied promise of the plaintiff to pay for the property wrongfully taken and kept. The rule is well established that where the tort-feasor has derived a benefit from the conversion, the owner of the property may sue the wrongdoer in *assumpsit* for the value of the benefit he received: *Crown Cycle Co.* v. *Brown,* 39 Or. 285 (64 Pac. 451); *Hornefius* v. *Wilkinson,* 51 Or. 45 (93 Pac. 474); 2 R. C. L. 755. The principle of law, which underlies this theory of recovery, is well stated by Professor Woodward in The Law of Quasi Contracts, Section 270:

"Upon the commission of a tort an obligation always rests upon the tort-feasor to compensate the person injured for the damage suffered by him. The commission of a tort, however, frequently results not only in damage to the person injured but in a benefit to the tort-feasor. In the case of conversion by the wrongful sale of another's goods, for example, the owner suffers damage to the extent of the value of the goods and the converter is benefited to the extent of the sum realized by the sale. Wherever there is such an enrichment of the wrongdoer he is clearly under a moral obligation (aside from the obligation to pay damages) to make restitution, either in specie or in value. Although the injured party already had an adequate remedy at law, it is not surprising that the courts came to regard this moral obligation to make restitution as analogous to a debt, and by the familiar device of a fictitious promise, brought it within the reach of the simple and convenient remedy of *indebitatus assumpsit.*"

8, 9. In order to recover under this doctrine, the plaintiff must establish two propositions; first, the commission of the tort, and, second, the receipt of a benefit by the wrongdoer. Since the court found that there was no evidence that plaintiff's possession of the lumber was wrongful it eliminated tort from the case entirely, and submitted it to the jury as though the plaintiff purchased some of defendants' lumber and failed to pay for it. In its pleadings and throughout the trial, the plaintiff insisted that the Hubbard Company had authority to sell this lumber and put the plaintiff in possession of it; it insisted that it had paid the Hubbard Company and that the Hubbard Company had authority to receive payment. This shift in the theory of the case that the court made was in the direction of the defendants' contentions. The shift in position is, therefore, an abandonment of the allegations in the complaint that the plaintiff's possession of the lumber was wrongful, and resulted in an implied promise, to the new position that its possession was a rightful one and was accompanied by a promise to pay the reasonable value of the lumber.

It is apparent that this shift in position did not prejudice the plaintiff. As we have observed, the plaintiff contended from the outset that the Hubbard Company put the plaintiff into possession, that it had authority to do so, and that the plaintiff had paid the Hubbard Company for all it received.

10, 11. A pleader cannot always know in advance what his proof will establish. If all pleaders could foresee the results which their proof will produce, there would be practically no lawsuits; almost all cases would be settled before the courts were reached. This uncertainty as to the unknown proof should

caution the courts to allow the pleader a little loose-ness of expression so as to make provision for the uncertainty of the proof, provided that no unfair advantage is taken of the opponent thereby. Section 85, Or. L., declares that the courts shall construe pleadings liberally so as to promote substantial justice. When the court below announced its attitude in regard to the pleadings, the plaintiff did not ask leave to amend nor for an opportunity to offer more evidence, nor did it claim that the court's construction of the pleadings placed the plaintiff at a disadvantage. We do not believe that the pleadings misled the plaintiff, nor do we find any indication that the situation denied plaintiff a fair presentation of its case. The creation and interpretation of the rules of procedure are not the ultimate end of the law; rules of procedure are merely an avenue of approach.

12, 13. The present situation is one where the pleading, in alleging the cause of action, sets up two theories of recovery. Very likely the theory of conversion and a resultant cause of action in *assumpsit* was the one the defendants intended to rely upon; the other theory of treating the transaction as a sale of defendants' lumber by the Hubbard Company to the plaintiff was a haven of refuge to which the defendants were forced when their major theory failed. A number of such situations have been before the courts. Where the subsequent adoption of the minor theory works no injustice to the opponent, the courts have allowed the pleader to avail himself of the minor theory: *Greentree* v. *Rosenstock,* 61 N. Y. 583; *Bruheim* v. *Stratton,* 145 Wis. 271 (129 N. W. 1092); *Rogers* v. *Duhart,* 97 Cal. 500 (32 Pac. 570). We believe that our previous decisions are in harmony with this view: *Corbett* v. *Wrenn,* 25 Or. 305 (35 Pac.

658); *Miller* v. *Hirschberg*, 27 Or. 522 (40 Pac. 506); *Cochran* v. *Baker*, 34 Or. 555 (52 Pac. 520, 56 Pac. 641). Cases cited by the plaintiff to the effect that a party is bound on appeal by the theory employed below does not affect the situation; a reading of the authorities cited by the plaintiff clearly indicates that the theory below means the theory upon which the case was decided by the tribunal. *Nichols* v. *Gage*, 10 Or. 82, cited by plaintiff, does not contain anything at variance with our conclusion. There the case was submitted to the jury upon theories of affirmance of the contract and conversion, so confused that the jury was misled: *Oolitic Stone Co.* v. *Ridge*, 169 Ind. 639 (83 N. E. 246), also cited by the plaintiff, is the keystone case of the Indiana rule of strict theory pleading. Indiana has adhered with never failing loyalty to the strict theory rule; in fact, its own courts state that this rule is peculiar to that state: *Chicago Ry. Co.* v. *Collins*, 82 Ind. App. 41 (142 N. E. 634, 143 N. E. 712). We, therefore, find that the court committed no error in submitting to the jury the case as one based on the receipt by the plaintiff of defendants' lumber, accompanied with a promise to pay the reasonable value of the lumber received.

14, 15. It is contended that the court erred in receiving in evidence the contract entered into between the defendants and the Hubbard Company. This contract provided that the defendants should supply the Hubbard Company with logs and pay for all labor used in manufacturing the logs into lumber; the title to the logs and lumber to vest in the defendants until all money which the defendants had "heretofore advanced" to the Hubbard Company had been discharged. A subsequent clause of the contract provided that the agreement should remain in force so

long as the defendants furnished logs to the Hubbard Company. Plaintiff's objection is to the effect that this contract related only to money "heretofore advanced" and not to subsequent advances. Perhaps, if the parties had placed no practical construction upon the contract, this objection would be tenable. But there was much evidence to the effect that Hubbard and the defendants regarded that the title to all lumber cut from the logs supplied by the defendants remained in the defendants until all sums advanced at any time by the defendant had been repaid. There was also evidence that plaintiff had full knowledge of the contract; in fact, there was evidence that plaintiff had in its possession for some days Hubbard's copy of this contract, before the plaintiff and Hubbard entered into their contracts. In addition, there was evidence that the plaintiff was fully informed of the manner in which the defendants and Hubbard were operating under this contract. Such being the situation, the contract was material and admissible in evidence. Nor do we believe that it is necessary for us to determine whether the effect of the contract was to create a chattel mortgage, or a conditional sale, or an undertaking for a lien. The terms of the document itself and plaintiff's knowledge of the manner in which the parties were operating under it charged the plaintiff with notice of its legal effect. Putting upon the contract the construction most favorable to the plaintiff, nevertheless the plaintiff took the lumber with full knowledge of defendants' rights; that is, with knowledge that Hubbard and the defendants construed the contract as making the defendants owners of the lumber. Such being the circumstances, the document was properly received in evidence; the court, in appropriate in-

structions, submitted to the jury all questions of fact involved in the foregoing matters.

16. Plaintiff contends that the court erred in permitting the witness, Lee R. Hubbard, who was president of the Hubbard Company at the time the foregoing events transpired, to testify to his opinion of the reasonable value of the lumber which the defendants say they owned and for which they sought to hold plaintiff liable. Hubbard had testified that for sixteen or eighteen years he had been in the lumber business; that he was familiar with this particular quantity of lumber and with its value. Having testified that in the latter part of October the market was at its lowest point, he was permitted to testify to his opinion of the value of this lumber at that time. Due to his personal contact with this lumber and his familiarity with lumber values, his opinion was clearly admissible: Wigmore on Evidence, § 712 and §§ 1940–1946; Chamberlayne on Evidence, § 2099f.

17. Next, the same witness was permitted to testify over plaintiff's objection to a number of matters which he said he took into consideration when he formed his opinion as to the value of this quantity of lumber; for instance, he testified that he had calculated the total quantities of the various grades of lumber shipped to the defendants and also to the plaintiff during September and October; that he had determined the total sums paid by the defendants and the plaintiff for these various grades, and had computed all commissions and freight charges paid. He further testified that he had calculated the average prices paid by defendants and plaintiff for these various grades. The court then permitted the witness to testify to the results of his calculations. The total shipments to defendants and to the plaintiff were

material and relevant to prove the quantity which the defendants claimed the plaintiff took and used. The total price paid by defendants was admissible to prove the state of account between the Hubbard Company and defendants; the total sums paid by plaintiff to Hubbard could not have harmed the plaintiff because later the plaintiff offered evidence of these sums to prove the condition of its account with the Hubbard Company.

18, 19. Plaintiff's more earnest objection relates to the reception of evidence of the average prices, calculated as aforesaid by the witness. When defendants offered this evidence counsel for the defendants stated, upon three different occasions, that he offered it to show the various matters taken into consideration by the witness when he formed his opinion of the value of the whole mass of lumber. We believe the evidence was admissible for this limited purpose. It is competent for a person offering a witness whose observations or opinions are admissible to have the witness relate the events and data upon which the opinion is based, so that the jury may know what is back of the opinion: Wigmore on Evidence, § 655; Chamberlayne on Evidence, § 2624; 22 C. J. 575. Hence, no error was committed in the reception of this testimony. This also disposes of the objections to the testimony of the witness Harrington, who testified to some of the same matters covered by Hubbard's testimony.

20. We have not overlooked the fact that the trial judge, in commenting upon the reception of some of this evidence, said:

"This testimony is offered solely for the purpose of showing of what the value of the lumber might be; it is not offered for the purpose of showing, and the jury will so understand, that it is not offered for the

purpose of showing that the Menefee Lumber Company received any particular amount in any particular car, or any particular kind, at all.''

Even if this could be construed as a statement that the evidence was admitted for any purpose other than to show the foundation of the witness' opinion, no error was committed, for at that time the witness was stating the amounts the plaintiff had paid for the lumber which the defendants claimed, and, as we have seen, purchases of this identical lumber by the plaintiff were admissible as evidence of value.

21. To this court it would seem that the more serious objection to all this evidence was that the opinions of Hubbard and Harrington to the effect the lumber was worth a certain sum per thousand feet was based largely upon the calculations of the average values. But the remedy for such a situation is not an objection when the witness undertakes to explain how he arrived at his conclusion but to move to strike out the opinion which he previously expressed and which it now develops was not based upon proper data. No such motion was ever made and it is possible that what now appears to be rather poor support for the opinions of the witnesses might have been fortified more fully had the motion been made.

22. It is claimed that error was committed in the reception of the testimony of the witness Streight. He was asked:

''I want you to read all the items and tell the jury how much lumber was shipped of No. 2 clear or better to MacDonald & Harrington upon direct or assigned invoices.''

His answer to this question was followed by questions in regard to the various other grades of lumber, and the average price received by the Hubbard Com-

pany from the defendants therefor. The witness Hubbard had already covered this field; invoices used by the witness Streight and by Hubbard were already in evidence. Streight had no personal knowledge of the facts which he could convey to the jury, nor did he pretend to have any personal knowledge. As the question put to him indicated, he was reading to the jury and perhaps making several brief calculations from invoices and papers in evidence. These calculations were of a type which any juror could make for himself. Streight in no way vouched for the facts which he passed on to the jury; as was apparent to the jury, he saw some things in print and, in response to the questions put to him, read to the jury what he saw and then made a few simple calculations. The objection that this proceeding was incompetent and immaterial should have been sustained, but the error was harmless; it perhaps falls within the administrative discretion of the trial judge to permit a witness to perform such simple functions as reading an exhibit and making minor calculations: Chamberlayne on Evidence, § 1749.

The next group of exceptions pressed upon us by the plaintiff relate to a number of instructions requested by the plaintiff upon the law of conversion. But the disposition which we have made of the conversion issues renders it unnecessary for us to consider these requested instructions. Likewise, the construction which we have placed upon the contract between the Hubbard Company and the defendants renders it unnecessary for us to dispose of the matters urged by the plaintiff upon the motion for directed verdict.

The next group of exceptions relate to the refusal of the court to give plaintiff's requested instructions

on the law of estoppel, payment and *indicia* of title. We have carefully reviewed these requested instructions and have compared them with those given by the court. We find no error here. Counsel for plaintiff also excepted to some remarks of the court in the course of its instructions which the plaintiff felt might be construed by the jury as an indication that the court believed that the defendants' claim of title to the lumber was well founded. We do not believe that the court's instructions are capable of that construction; but if any juror placed such an interpretation upon the court's instructions, the court sufficiently corrected the matter by its subsequent remarks.

Finding no reversible error in the record, the judgment of the lower court is affirmed.   AFFIRMED.

RAND, C. J., and BELT and McBRIDE, JJ., concur.