Argued January 21; affirmed February 16, 1932

# SCHWARY *v.* SCHWARY

(7 P. (2d) 986)

*Oren R. Richards,* of Portland (Richards & Richards, of Portland, on the brief), for appellant.

No appearance for respondent.

ROSSMAN, J. The complaint alleged that on January 3, 1929, the defendant executed and delivered to the plaintiff his promissory note in the sum of $600 payable upon demand; that at the same time the defendant, in order to secure the payment of the note, executed and delivered to the plaintiff a chattel mortgage creating a lien upon an automobile of which the defendant was the owner; and that the debt has never been paid. A copy of the mortgage was attached to the complaint.

The answer denied execution and delivery of the note; admitted the defendant's ownership of the automobile; and "that on January 3, 1929, the defendant executed a chattel mortgage bearing that date, and that a copy of said chattel mortgage is attached to said complaint." Further answering, the defendant alleged "the defendant on the 3d day of January, 1929, executed a note and chattel mortgage; that the said note and chattel mortgage were never delivered to Ed Schwary; and that the said plaintiff, Ed Schwary, never paid the said defendant any sum or sums of money for said note and chattel mortgage." Continuing, the answer averred that the plaintiff wrongfully obtained possession of the mortgage, continued to retain it even after the defendant had demanded its

return, and that the plaintiff never had possession of the note. The answer concluded with the averment that the defendant was not indebted to the plaintiff. The reply denied the new material averred in the answer. The portions of the chattel mortgage which are material to the issues awaiting determination are:

"In consideration of $600.00 to me paid by Ed Schwary, I hereby bargain, sell and convey unto said Ed Schwary the following personal property: * * * provided, nevertheless, that the payment of a certain promissory note, of which the following is substantially a copy:

"$600.00, Portland, Oregon, January 3, 1929, on demand after date, I promise to pay to the order of Ed Schwary of Portland, Oregon, $600.00 * * *.

"Ed Schwary.

shall render void this conveyance. But in case default shall be made in the payment of said promissory note, or any part thereof * * *. Witness my hand and seal.

"(Signed) Ed Schwary."

Upon the reverse side of the mortgage the defendant swore that he was the owner of the mortgaged property and acknowledged, before a notary public, his signature to the mortgage.

■ The plaintiff, who apparently was an uneducated man, testified that upon arriving in Portland shortly before January 3, 1929, he made his home with the defendant, and that at that time he had approximately $800 in cash upon his person. When asked why he carried such a large sum in his pockets, he replied, "Because I don't know nothing about checks." He testified that, at the request of the defendant, his cousin, he loaned him the $600 mentioned in the complaint so that he (the defendant) could complete the purchase of a meat market for which he was then

negotiating. The plaintiff testified that the defendant, upon returning from his attorney's office, handed him a paper, being the chattel mortgage mentioned in the complaint, and told him that this would be "his protection" to assure the repayment of the $600.

The defendant testified that, at his request, his attorney prepared both the note and the mortgage aforementioned. The note described in the complaint, according to his testimony, is an exact copy of the one signed by himself, and the mortgage produced by the plaintiff was the instrument which his attorney had prepared and which he signed. He swore that shortly after reaching his home with these two instruments he marked the note paid and then, "I folded it right up and put it in my pocketbook," and he described his disposition of the mortgage in the following words: "I took the mortgage out to the store and put it in my desk." He testified that he never relinquished possession of the note but declared that some time after having placed the mortgage in his desk he discovered its absence, and upon inquiring whether he had taken it, the plaintiff freely admitted that he had done so. He added that he had never borrowed any money from the plaintiff. Upon direct examination he made no effort to account for his action in preparing and signing these instruments, but upon cross-examination the following occurred:

"Q. Why did you do that?

"A. I done it on no consideration at all.

"Q. What was the idea of doing it then?

"A. There was no idea to it at all; just an idea of mine, that's all, but there was no idea to it.

"Q. Tell the court what your idea was now.

"A. There was no idea to it."

Upon being pressed still further for his reasons why he had gone to the pains of having an attorney prepare these instruments, and for his action in signing them, he finally replied:

"I done it in case I was in any accident or anything like that, I don't want the car to be taken away from me, and I made it in order to use it at any time that I got in trouble or accident of any kind. * * * But after I made this mortgage and note, I got to thinking things over and I knew that that was against the law, there was no consideration for it. * * * Ed Schwary, it is true, is my cousin * * * that don't mean that a cousin couldn't go back on a cousin and try to take his property from him. * * * I got to thinking these things over, and I just said, well, I will not give Ed Schwary this mortgage. I just took the mortgage and put it in my desk. I marked the note paid. I folded the note and put the note in my pocketbook and kept it. Ed Schwary didn't know anything about this mortgage or note."

He testified that he marked the note paid "to protect myself, in case that the note—somebody should get hold of the note or the note might be lost." He swore that he did not destroy the note after having concluded not to use it, "because I never thought about it," and that he did not destroy the mortgage, "because I am not in the habit of burning my papers." He added that he did not mark the mortgage paid, "because I didn't think it was necessary." When asked why he did not tear his signature off of the note he failed to respond. He had been in the meat market and other lines of business for more than twenty years, and had been identified with other litigation.

The testimony of the additional witnesses is not sufficiently material to warrant us in setting forth our review of it. Since the trial judge entered a decree

in favor of the plaintiff, we must assume that, in his opinion, the testimony preponderated in favor of the plaintiff; that he was satisfied the plaintiff had loaned to the defendant the sum of $600; and that the latter not only had signed the mortgage but also had delivered it to the plaintiff. The evidence upon this issue, as will be observed from the foregoing, could support a conclusion either way. However, the defendant's explanation of the making of the note and mortgage, of his retention of it, and of the manner in which the plaintiff acquired possession seems to us extraordinary. Since the judge, who had the advantage of having seen the witnesses, rejected these novel explanations and found in favor of the plaintiff, we believe that we, too, ought to conclude that the plaintiff actually loaned the defendant $600, and that the mortgage was delivered to the plaintiff as security.

 Having concluded that the evidence warrants a finding that the defendant borrowed from the plaintiff $600, and delivered to him the mortgage to secure the payment of that sum, the question presents itself whether the plaintiff can maintain this suit without proving that the defendant delivered to him the note. The plaintiff freely admitted that the note had never come into his possession. In fact, he apparently had never heard of a legal instrument known as a note, and it was never in his contemplation that one should be delivered to him. We are prepared to believe that an ignorant person who, according to the testimony, ''don't know nothing about checks'' would not be likely to know enough to ask for a note from his cousin, who was his debtor, upon being handed by the latter a mortgage which was apparently a combination note and mortgage, especially when the cousin had just returned

from his lawyer's office and declared, "this is the only protection you have got for your money." We assume that it is unnecessary to buttress with the citation of authority the statement that a mortgage can be given to secure the payment of any kind of a debt, whether the latter has its inception in a note or not. See, however, 11 C. J., Chattel Mortgages, p. 446, § 58. That being true, it would seem that the important item is to assure ourselves that a debt really existed in favor of the plaintiff rather than to demand the production of a specific kind of paper. In fact, the form of the evidence establishing the debt is of such slight consequence that an action may be maintained upon the mortgage itself to recover the debt therein mentioned if that instrument acknowledges the debt and contains an agreement to pay it. See Griffin and Curtis, Chattel Mortgages and Conditional Sales, p. 148, and 11 C. J., Chattel Mortgages, p. 746, § 588. Indeed, a covenant in the mortgage to pay the debt will support an action even though a recovery upon the note has become barred by the Statute of Limitations: *Dinniny v. Gavin*, 4 App. Div. 298 (39 N. Y. S. 485). Nor is a misdescription of the debt necessarily fatal in a suit of this character: Jones on Chattel Mortgages (5th Ed.), § 86, and 5 R. C. L., Chattel Mortgages, p. 419, § 49.

■ In our present instance, the chattel mortgage signed by the defendant admits that he received from the plaintiff the sum of $600, and also acknowledges an obligation upon his part to repay the same according to the terms of a promissory note which is copied into the mortgage. Upon consulting that copy, it appears that the note was payable upon demand. We cannot understand why the above is insufficient to support this suit. Nothing concerning the debt is uncertain nor

left in doubt. The defendant certainly could not have been prejudiced by the plaintiff's inability to produce the note when he freely admitted that he had retained it in his possession ever since attaching his signature to it. In fact, he himself produced it upon the day of the trial and offered it in evidence. Apparently at one time he had intended to deliver the note to the plaintiff, but after leaving his attorney's office changed his mind. Since he never delivered it to the plaintiff, and since the latter was unaware of its existence, the note had never become a part of this transaction. As we have seen before, a chattel mortgage can be valid without a note if the mortgage itself contains an acknowledgment of the debt and expresses the time for payment. The evidence of the debt in the present instance, as we have seen above, is complete without the note which the defendant retained in his possession. These being the circumstances, we conclude that the debt was sufficiently acknowledged by the mortgage so that the latter instrument was fully capable of supporting this suit.

■ It is apparent from the above that we are permitting a recovery upon the mortgage, whereas the complaint was based primarily upon the note. There is a copy of the mortgage, however, attached to the complaint as an exhibit. We do not believe that this variance is fatal to recovery. A variance which does not amount to a failure of proof is no longer fatal: Section 1-903, Oregon Code 1930. Enactments similar to the one just cited have greatly liberalized upon the former rules applicable to variance: Clark on Code Pleading, p. 520; *Menefee Lbr. Co. v. MacDonald*, 122 Or. 579 (260 P. 444). During the course of the trial the defendant claimed no surprise nor prejudice as the production

of the proof progressed. We conclude that since the mortgage expressed the debt in precisely the same terms as the note mentioned in the complaint the defendant's rights were in no manner prejudicially affected when the recovery was allowed.

Having arrived at the above conclusion, it follows that the decree of the circuit court is affirmed.

BEAN, C. J., RAND and KELLY, JJ., concur.