# UNIVERSAL CREDIT CO. v. WYOMING MOTOR CO.

(No. 2244; April 27, 1943; 136 Pac. (2d) 512)

For the appellant, the cause was submitted on the brief of *Frank A. Barrett,* of Lusk, and *Bangs* and *Rudesill,* of Rapid City, South Dakota.

82

For the respondent, the cause was submitted on the brief and oral argument of *Earl E. Wakeman,* of Newcastle.

RINER, Justice.

This is a proceeding by direct appeal to review a judgment of the District Court of Weston County in an action wherein the Universal Credit Company was plaintiff and the Wyoming Motor Co., co-partnership, and Vernon R. Thomas and J. E. Oliver, co-partners, were defendants. The result of the action was a dismissal finally as against Oliver by a separate judgment to that effect; also a separate judgment was rendered by the court against the defendants, Wyoming Motor Co. and Vernon R. Thomas for the amount claimed by the plaintiff plus interest, attorney fees and costs. The appeal at bar was taken by the Universal Credit Company from the judgment of dismissal above mentioned. The parties will usually be hereinafter designated, the Universal Credit Company as the "plaintiff" or the "Credit Company," and the Wyoming Motor Co. as the "Partnership" and the defendants, Vernon Thomas and J. E. Oliver, by their respective surnames.

The action aforesaid was one to recover the unpaid balance of money advanced by the Credit Company to the Partnership to enable the latter to finance the purchase of certain motor cars. It appears that on March 28, 1939, the Partnership delivered to the Credit Company the following instrument:

"Date 3-28-39

To UNIVERSAL CREDIT COMPANY:

Below are signatures of those persons who are authorized to execute and/or endorse in behalf of the undersigned, notes, acceptances, contracts and all other instruments or assignments thereof used in connection with your wholesale financing. This authorization is to be effective until further notice and in the absence of special instructions to the contrary any one signature may be accepted.

Firm Name:   Wyoming Motor Co.

By:   Vernon R. Thomas
Title or Capacity in Company Owner

Actual signature of persons authorized,

| Vernon R. Thomas | J. E. Oliver |
|---|---|
| (name) | (name) |
| Owner | Mgr. |
| Title or Capacity in Co. | Title or Capacity in Co." |

Thereafter the Credit Company paid the Ford Motor Company the purchase price of four automobiles, among them being one with a motor No. 5462621. These cars were shipped to the Partnership at Newcastle, Wyoming. In order to have the car with the number aforesaid thus delivered over to the Partnership, the Credit Company advanced the sum of $570 thereon. The Partnership, at or about the same time, executed an instrument reading:

## "TRUST RECEIPT

Undersigned Trustee hereby acknowledges receipt of the property described on the reverse side hereof, title to which has been retained by Entruster, described below, until Trustee has paid to Entruster the unpaid balance shown on the reverse side hereof in space marked 'Amt. Due Each Car' which Trustee promises to pay to the order of Entruster ninety (90) days after date, with interest after maturity at the highest lawful contract rate. Trustee may exhibit said property for

sale and sell same in the ordinary course of retail trade, the proceeds thereof to be held in trust for the account of Entruster and paid over immediately to Entruster. Entruster may at any time cancel this trust and repossess said property or the proceeds thereof, and may, at its election, declare Trustee's interest in said property to be forfeited upon crediting Trustee's account with the amount required by law. Trustee agrees that all the provisions of any underlying agreement between Trustee and Entruster shall become part of this instrument as though set out verbatim herein.

Executed Jan. 15, 1940

Wyoming Motor Co.   (Seal)
Trustee)

By   V. R. Thomas

Witness   A. H. Dixon   ".

It will be observed that the Credit Company, after obtaining title to the cars by payment of the purchase price thereof to the manufacturer, reserved to it as the "Entruster" the title thereto until the amount due on the car should be paid. On the reverse side of this Trust Receipt was given a list of the cars thus delivered and the amount originally due thereon. This instrument was filed for record in the office of the County Clerk of Weston County, Wyoming. The plaintiff proved that at the time of the institution of the action in the court below that the entire amount of $570 aforesaid had not been repaid to the Credit Company but that there was a balance due it of $118.88 with interest.

The Partnership also held title to a new Ford motor car, Motor No. 5592255 and gave to the plaintiff "a purchase price note and chattel mortgage on said automobile for $647.40. This instrument was in the following form:

"The undersigned mortgagor hereby mortgages to the undersigned mortgagee the new Ford motor vehi-

cle(s) described below for the total of the amounts shown below opposite the description of the respective cars, which mortgagor promises to pay at the office of Universal Credit Company upon demand, with interest thereon from date hereof at the rate of 4% per annum, and if this mortgage be placed with an attorney for collection, 15% of the amount due hereunder as attorney's fees, or if prohibited, the amount prescribed by law:"

These statements in writing were followed by a description of the vehicle aforesaid with a notation that the sum of $647.40 was due on the car; immediately thereafter the writing continued "To secure payment of all sums due hereunder" and there was set forth the form of a chattel mortgage on the automobile last above mentioned. This combined form of note and mortgage was signed thus:

"Executed May 20, 1940

WITNESS:

E. E. Johnson

WYOMING MOTOR CO.
Mortgagor

By    V. R. Thomas              (Seal)
(Official Title)
UNIVERSAL CREDIT COMPANY
Mortgagee

By    C. M. Hecht                    ".

As so signed, it was filed in the office of the County Clerk of Weston County, Wyoming. There appears to have been nothing paid on this indebtedness of $647.40.

The Partnership additionally obtained and held title to another Ford "Hiway Patrol" car, engine No. 215308 and delivered to plaintiff another "purchase price note and chattel mortgage" on said car for $718.10. This

combined form of note and mortgage was, in general, similar in phraseology to that described in connection with the Ford car with motor No. 5592255. This instrument does not seem to have been filed in the County Clerk's Office above mentioned. Nothing appears to have been paid on this indebtedness. The proof on the trial on the part of the plaintiff was that the total of these three items of indebtedness, or $1484.38, had been advanced by the Credit Company to the Partnership and had not been repaid. The trial court excluded the three instruments described above and upon motion of the defendant, Oliver, dismissed the case as to him as already stated.

It will be noted that there was no attempt made in the action to foreclose these chattel mortgages or to obtain relief under the provisions of the Trust Receipt aforesaid other than the repayment to the plaintiff of the balance due on the moneys advanced for the benefit of the Partnership, as has been hereinabove indicated.

It is urged on behalf of the defendant, Oliver, and this idea appears to have been incorporated in the judgment of dismissal entered by the trial court as aforesaid, that Section 71-104 W. R. S., 1931, is controlling in the determination of the validity of the two combined forms of note and mortgage described above, and also that the Trust Receipt, quoted above, was not admissible in evidence because the signature of Thomas was not properly identified.

Section 71-104, supra, reads:

"It shall be necessary for each and every member of a co-partnership to execute and acknowledge a mortgage, bond, conveyance or other instrument intended to operate as a chattel mortgage for and on the behalf of the co-partnership; provided, that a chattel mortgage may be given to a co-partnership, in its co-partnership name without enumerating the several members thereof."

Under that section it was held by this court in Lellman v. Mills, 15 Wyo. 149, 87 Pac. 985, that it was "a prerequisite to a valid chattel mortgage of partnership property that every member of the partnership should sign it." See also Ridgely v. First National Bank, 75 Fed. 808.

But in Boswell v. First National Bank of Laramie, 16 Wyo. 161, 92 Pac. 624, 93 Pac. 661, it was also held with reference to the same statutory section that "a partner if under no legal disability might, by duly executed power of attorney, appoint an attorney in fact to act for him and in his name in the execution and acknowledgment of a chattel mortgage; and that a co-partner may be thus appointed." '

In view of the decision last mentioned and the authority plainly granted by the instrument dated "3-28-39" and quoted above, we are inclined to doubt that these chattel mortgages mentioned above were invalid. But however that may be, it is reasonably plain that the statute aforesaid was not intended to invalidate written and signed promises to repay money advanced to partnerships unless signed by both partners. As already pointed out, the mortgage feature of these instruments is not invoked in this law suit. The promises to repay moneys advanced for the use of the Partnership are what is relied upon; that is to say, the action is for money paid out by the Credit Company on behalf of the Partnership and not repaid.

In Lindheimer v. Supreme Liberty Life Ins. Co., 263 Ill. App. 524, it is said that:

"The right to an action at law on a note is separate and distinct from the right to enforce the lien in equity. The primary object of a foreclosure proceeding is to subject the property pledged as security for the note to the payment of the debt, but in an action on the note a judgment in personam is desired (Okon v. Kaenas, 222 Ill. App. 45) and the lien in equity may be lost

while the right to a judgment on the note exists. * * *"

In Dyer Law & Collection Co. v. Abbott, 52 Cal. App. 545, 199 Pac. 340, this language was used with reference to an action on a note where the alleged mortgage given to secure it was invalid:

"It conclusively appears from the record herein that the note upon which the action is based was not secured by a mortgage or other lien upon any property whatsoever, and hence, notwithstanding the existence of an instrument which in form purported to, but did not in fact, create a lien as security, plaintiff was entitled to ignore the same and bring an action to recover a personal judgment against defendant upon the note as maker thereof. See Toby v. Oregon Pac. R. R. Co., 98 Cal. 490, 33 Pac. 550; Savings Bank v. Central Market Co., 122 Cal. 28, 54 Pac. 273."

The decision in Mantle v. Dabney, 44 Wash. 193, 87 Pac. 122, was to the effect that where a mortgage was ineffective as security for the note sued on, the holder was not required by statute to attempt to enforce the security before bringing an action on the note, and in the course of the opinion the court said:

"Here a mortgage given by the husband upon community property without the wife joining in the execution thereof is absolutely void. It therefore follows that the deed of this property, in so far as it was intended to serve as security for the payment of the note sued on, was and is void. Hence the statute in question did not forbid the bringing of this action, as the note was not secured."

The text of 37 Am. Jur. 23, Section 517, citing many cases says that:

"The obligation of the debtor to respond in his person and property is the same as if no security had been given. Therefore, a creditor holding a note secured by a mortgage may ignore his security and bring an action on the note * * *."

In Shaver v. the Bear River and Auburn Water and

Mining Company, 10 Cal. 396, the opinion was by Chief Justice Terry, concurred in by Justice Stephen J. Field, subsequently a member of the Supreme Court of the United States. In that opinion we find it stated that:

"There is no doubt that the mortgage itself, being in contravention of law, is void, but it is not perceived that this fact invalidates the debt it was intended to secure. (Sherwood v. Dunbar, 6 Cal., 52.)"

See also Shore v. Weber, 11 Dom. L. R. 148, 24 West. L. R. 343, 4 West. Wkly. 714; Schwary v. Schwary, 138 Oreg. 690, 7 Pac. (2d) 926.

Under these authorities, which we think state correctly the law, even if we were to assume that the chattel mortgage portions of the combined forms of promises to repay the money advanced by the Credit Company and chattel mortgages were invalid under Section 71-104, supra, we are unable to perceive why that fact, if it should be so regarded, should invalidate the instruments as agreements to pay back the money advanced by the Credit Company to the Partnership on account of these motor cars.

So far as the admissibility in evidence of these instruments is concerned, we have noted that the Trust Receipt aforesaid as well as the note and chattel mortgage on the motor car with engine No. 5592255 were filed in the County Clerk's Office of Weston County. Section 30-513 W. R. S., 1931, provides:

"Copies of all papers filed in the office of the county clerk, and transcripts of the books of record kept therein certified by him under the seal of his office, shall be prima facie evidence in all cases."

If certified copies of these instruments were admissible as prima facie evidence, it would seem that the original instruments on file in the county clerk's office were certainly admissible.

But even if we should be mistaken in some of the views expressed above, still we think plaintiff's petition with its three causes of action, the one setting out the Trust Receipt aforesaid and the other two the combined forms of chattel mortgage and promises to repay to the Credit Company the money advanced by it to the Partnership together with the plaintiff's proof in support thereof, are sufficient to make out a prima facie case, at least, of money paid out by the Credit Company for the use and benefit of the Partnership which should justly be returned to the plaintiff.

Where the allegation and proofs are sufficient to raise the necessary inference that this payment of money was for the use of the defendant, the absence of an express allegation to that effect would not be fatal. See Murray v. Estes, 45 N. Y. S. 1002; Crooks v. Hoffman, 216 Mo. App. 269, 262 S. W. 410; Island Petroleum Co. v. Commissioner of Internal Revenue, 57 Fed. (2d) 992; Treece State Bank v. Wade, 283 S. W. 714, (Mo. App.).

In conclusion it may be recalled that the Uniform Partnership Act, enacted in this state in 1917 (Ch. 97 Laws Wyo., 1917) and repealing "all acts or parts of acts inconsistent" with it and now appearing as Section 81-301 W. R. S., 1931 reads in part:

"(1). Every partner is an agent of the partnership for the purpose of its business, and the act of every partner, including the execution in the partnership name of any instrument, for apparently carrying on in the usual way the business of the partnership of which he is a member binds the partnership, unless the partner so acting has in fact no authority to act for the partnership in the particular matter, and the person with whom he is dealing has knowledge of the fact that he has no such authority * * *"

This is, of course, the well-known rule with reference to the authority of partners. It is clear that Thomas

was invested with authority to sign the partnership name to these various instruments; and as far as the record herein now stands, we think, as already indicated, a prima facie case was established for the plaintiff.

We are therefore constrained to reverse the judgment of dismissal as to the partner, Oliver, and remand the cause as it concerns his obligation in this matter for a new trial.

*Reversed.*

KIMBALL, Ch. J., and BLUME, J., concur.