JAPHTHA A. HUDELSON ET AL. V. FIRST NATIONAL BANK
OF TOBIAS ET AL.

FILED MAY 18, 1897. No. 7280.

1. Replevin: AFFIDAVIT. In an action of replevin commenced in the district court, where the affidavit filed contains no statement that the property is wrongfully detained by the defendant, if there is a duly verified petition on file in which there appears such statement, it is sufficient to give jurisdiction to issue the writ, and the writ, if issued, will not be void but voidable.

2. ———: ———. A statement in an affidavit of replevin that the plaintiffs "are entitled to the possession of said property," being in the present tense, means that they are entitled to the instant possession, and the affidavit is not insufficient for the reason that the word "immediate" was not used therein in connection with possession.

3. ———: ———: CONSTRUCTION. Where a statement of an affidavit may be read so as to give it a meaning which will make the affidavit defective, but may also be read so as to give it a signification which will support the affidavit, the latter will be adopted, especially where it is a less strained and technical reading than the former.

4. Affidavits: WAIVER OF DEFECTS. Where an affidavit has defects in form or substance which might be amendable, if the parties in the case who might interpose objections to the affidavit appear, answer to the merits of the action, and go to trial without making objections to the affidavit, they waive the defects.

5. Pleading: SUFFICIENCY OF PETITION. If a petition fails to state a cause of action, it will not support a judgment, and it may be attacked on account of such infirmity at any stage of the proceedings in the action.

6. Replevin: PLEADING. A petition in an action of replevin commenced in a district court is the basis of the action, and must be sufficient within and of itself. The affidavit in the suit cannot be resorted to to aid the petition in essential allegations in jurisdictions where both affidavit and petition are filed in actions of replevin.

7. ———: ———. A breach of the promise on which the action is predicated must be pleaded in the petition.

8. ———: ———. In an action of replevin wherein the plaintiff claims the right to possession of property by virtue of a special ownership conferred by chattel mortgage thereon in his favor, the petition filed must contain allegations which show that the debt se-

cured by the mortgage has matured, and also that it is unpaid, and if claimed by virtue of a clause in the mortgage by which the mortgagee may take possession at any time if he feels unsafe or insecure, the petition must also contain an allegation that the debt secured remains unpaid.

9. ――――: BOND: WAIVER OF OBJECTION. In this, a replevin action, a bond was given by the plaintiff before the property taken under the writ was delivered to him. The bond was imperfect or defective. On motion of defendant a new bond was required by the court, which was given. The defendant filed answer, issues were joined, and a trial had in which the defendant participated. *Held,* That the right to further object to the bonds was waived.

ERROR from the district court of Saline county. Tried below before HASTINGS, J. *Reversed.*

*Hastings & McGintie* and *Willard E. Stewart,* for plaintiffs in error.

*Bartlett, Baldrige & De Bord, F. I. Foss,* and *W. R. Matson, contra.*

HARRISON, J.

It appears that on July 18, 1893, there was being, and had been for some time prior thereto, conducted a lumber yard and coal business in Tobias, Nebraska, under the name and style of H. C. Larsen & Co. Whether owned and operated by C. W. Lyman and H. C. Larsen as partners, or the individual property of C. W. Lyman, and H. C. Larsen was the manager of the business without ownership or other interest in the business or property connected therewith, was one of the material contested issues of the trial. On July 18, 1893, notes and chattel mortgages evidencing the indebtedness of H. C. Larsen & Co. to the defendants in error, respectively, were executed to them by H. C. Larsen in the name of H. C. Larsen & Co., and duly delivered. The property described in these chattel mortgages included the stock of lumber and coal, all office fixtures, etc., of the business of H. C. Larsen & Co., at Tobias. At the same time, all promissory notes and book accounts of various parties in

favor of H. C. Larsen & Co. were assigned to defendants in error, and it was claimed that immediate possession of the mortgaged chattels was surrendered by Larsen and assumed by or for defendants in error. This last was disputed by the plaintiffs in error and became one of the issuable points in the controversy. On July 23, 1893, a writ of attachment issued in a suit, in which Japhtha A. Hudelson was plaintiff and C. W. Lyman defendant, was levied on the mortgaged property, and possession of it taken by the sheriff, as the individual property of C. W. Lyman, and on August 17, 1893, it was replevied at the instance of defendants in error, by virtue of the writ of replevin issued in the present suit. Defendants in error were successful in a trial of the issues, and the defeated parties ask of this court a review of the proceedings in the district court.

It is urged that the affidavit in replevin is fatally defective, in that it is claimed there was a failure to state in it that plaintiffs were entitled to the immediate possession of the property described; also, that the wrongful detention of the property by the defendants was not alleged, nor was it set forth that the property was not taken in execution on any order or judgment, etc. It is required by section 182 of the Code of Civil Procedure, among other things, that in an affidavit made and filed to obtain an order of delivery to issue in an action of replevin, there shall appear statements that plaintiff is entitled to the immediate possession of the property; "that the property is wrongfully detained by the defendant; that it was not taken in execution on any order or judgment against said plaintiff, or for the payment of any fine, tax, or amercement assessed against him, or by virtue of an order of delivery issued under this chapter, or any other *mesne* or final process issued against him." The affidavit in this case contained statements by which it was sought to establish the special ownership of the defendants in error of the property to be taken under the writ for which application was made, and further,

"that said plaintiffs are entitled to possession of said property; that it was not taken in execution, on any judgment or order against said plaintiff, for the payment of any fine, tax, or amercement assessed against them, or by virtue of an order of delivery in chapter providing for the replevin of property, or any other *mesne* or final process issued against the plaintiffs." In the portion of the foregoing which refers to the right to possession, the word "immediate" was not used, but the statement was made in the present tense, and claimed the right to possession then, at the time, which we think was sufficient. Its meaning was that right to instant possession existed. In the clause in reference to the property not being taken in execution, etc., which we have quoted from the affidavit, the word "or," as used in the section of the Code of Civil Procedure to which we have hereinbefore directed attention, between the words "plaintiff" and "for" was omitted, and it is claimed that this changed the sense so that it did not express what it should to fulfill the requirements of the Code. If read without a pause after the word "plaintiff," it is subject to the criticism made, but if read with a pause after such word, it conveys the proper idea; and we think we must adopt the latter method as the more natural and less strained, and as consonant to the rule of the Code in regard to liberal reading and construction of pleadings, and to avoid unnecessary technicality. It will no doubt have been noticed that there was an entire absence of any statement, either in the words of the Code or in their equivalents, or of facts which showed the wrongful, or any, detention of the property by the plaintiffs in error. This was a fatal defect. An allegation of unlawful detention is essential. (Cobbey, Replevin, sec. 542.) But this was an action in district court, and the petition, duly verified and on file, contained the statement of the wrongful detention of the property, and this was sufficient to give jurisdiction to issue the writ, and it was not void but voidable; and had the writ and affidavit been attacked by proper plea, the

court might on application have allowed the affidavit to be amended. (*Commercial State Bank v. Ketcham*, 46 Neb., 568; *Lewis v. Connolly*, 29 Neb., 222.)    No objections were made to either the form or substance of the affidavit in the district court, nor was the validity of the writ of replevin questioned, so far as the record presented here discloses. By appearing and answering to the merits and going to trial without making such objections, the parties waived defects in the affidavit.

It is claimed that the petition herein was insufficient, that it did not state a cause of action, for the reason that it was not alleged that the defendants in error were entitled to the immediate possession of the property, neither as a conclusion nor by facts pleaded, from which such right appeared or could even be inferred.    The petition was as follows:

"The plaintiffs, the First National Bank of Tobias, Nebraska, a corporation duly organized and existing under and by virtue of the laws of the state of Nebraska, the K. S. Newcomb Lumber Company, and Stanley Larsen complain of the defendants and say as a

"First Cause of Action.—That the plaintiffs, the First National Bank of Tobias, Nebraska, and K. S. Newcomb Lumber Company, and Stanley Larsen, have a special ownership in the following described goods and chattels, to-wit: All the stock of lumber, lime, timber, shingles, lath, sash, doors, moulding, cement, and merchandise of any kind and nature whatever in the lumber yard of H. C. Larsen & Co., of Tobias, Nebraska, on lots 14, 15, 16, 17, 18, and 19, in block 5, First Addition to Castor; also all office furniture and improvements on said lots; also coal house and coal on the Nebraska and Colorado Railway right of way at Castor, known as Tobias, in Saline county, Nebraska.

"And the said plaintiff, the First National Bank of Tobias, Nebraska, says that on the 18th day of July, 1893, H. C. Larsen & Co., then the owners of said property, exe-

40

cuted their promissory note to said plaintiffs in the words and figures following, to-wit:

" '$1,696.75.                    TOBIAS, NEB., July 18, 1893.

On demand, after date, I or we promise to pay to the order of the First National Bank of Tobias, Nebraska, sixteen hundred ninety-six and 75-100 dollars, for value received, at ten per cent per annum from maturity until paid. Interest payable annually. All sureties and indorsers on this note hereby waive protest, demand, notice of protest, extension of time given to the maker, or any of them, and guaranty payment of the same.

"   'P. O. Tobias.   No. 11719.   .   H. C. LARSEN & CO.'

"3. To secure the payment of said note they executed and delivered to said plaintiff a chattel mortgage upon the above described property, a copy of which chattel mortgage is hereto attached and marked Exhibit 'A.'

"4. Second Cause of Action.—And the plaintiff the S. K. Newcomb Lumber Company complain of the defendants for that on the 18th day of July, 1893, H. C. Larsen & Co. made and delivered to said plaintiff their promissory note, in writing, in the words and figures following:

" '$1,128.60.                    TOBIAS, NEB., July 18, 1893.

" 'On demand, after date, for value received, I or we promise to pay to the order of S. K. Newcomb Lumber Co. eleven hundred twenty-eight and 60-100 dollars, at the First National Bank of Tobias, with interest at ten per cent per annum from date until paid.

"                              'H. C. LARSEN & CO.'

"5. To secure the payment of said note, the said H. C. Larsen & Co. made and delivered to said plaintiff a chattel mortgage on the goods and chattels described above in first cause of action, copy of which is hereto attached and marked Exhibit 'B.'

"6. Third Cause of Action.—The plaintiff Stanley Larsen complains of the defendants and says that on the 18th day of July, 1893, H. C. Larsen & Co. made and delivered

to him their promissory note, in writing, in the words and figures following, to-wit:

"'$600.                    TOBIAS, NEB., July 18, 1893.

"'On demand, after date, for value received, I or we promise to pay to the order of Stanley Larsen six hundred dollars, at the First National Bank of Tobias, with interest at ten per cent per annum from date until paid.

"'H. C. LARSEN & CO.'

"7. To secure the payment of said note the said H. C. Larsen & Co. made and delivered to said Stanley Larsen a chattel mortgage on the goods and chattels described in the first cause of action in this petition, copy of which is hereto attached and marked Exhibit 'C.'

"8. The plaintiffs say that the firm of H. C. Larsen & Co. was composed of Hans C. Larsen and Charles W. Lyman.

"9. The defendants wrongfully detain said goods and chattels from the possession of the plaintiffs, and have wrongfully detained the same since the 22d day of July, 1893, to plaintiffs' damage in the sum of $300.

"10. The plaintiffs further say that John Barton is the duly elected, qualified, and acting sheriff of Saline county, Nebraska."

It is urged for defendants in error that inasmuch as the notes secured by the chattel mortgages were payable on demand, they were due when given, and hence there were defaults, and at the same time, by virtue of the clauses in the mortgages in relation to payment of the notes when due, the right to foreclose each at once arose, including the right to immediate possession. To ascertain what clauses were contained in the mortgages necessitated a reference to them, as none of the conditions are stated in the petition, unless it be said that merely attaching to a pleading, as an exhibit, a copy of an instrument, the execution and delivery of which is asserted in the pleading, constituted it a substantive part of the pleading, to be read, construed, and considered therewith,

its statements to be treated as statements of issuable facts. It has been said by this court on this subject that "the facts on which a plaintiff bases his right to recover should be stated in a systematic and orderly manner, and not by making a mere exhibit a part of the petition. An exhibit, however, if made a part of a petition, is to be considered, and if the facts therein stated, in connection with those in the petition proper, show a liability of the defendant to the plaintiff, a demurrer that the facts stated therein are not sufficient cannot be sustained." (*Pefley v. Johnson*, 30 Neb., 529.) In the petition in the case from the decision of which we have just quoted, the copy of the instrument was made a part of the pleading in the following terms, after reference to the contract, "a copy of which contract is hereto attached, marked Exhibit A, and made a part hereof;" but conceding, by way of argument, as we need not decide it, that these mortgages were parts of the petition, and to be read and construed with it, were there statements which showed a right to immediate possession in the parties for whom it was filed?

It is argued for the plaintiffs in error that the notes being due on demand, it was necessary to plead a demand; if not, no default would appear in their payment. It may be said that the authorities on the subject of the time at which a note payable on demand matures are not in harmony, but, as we view the conditions arising from the pleading under consideration, a settlement of this particular question is not a necessity,—is unnecessary. It is nowhere stated in terms in the pleading, nor can it be gathered or even inferred, that the indebtedness evidenced by the notes and mortgages had not been paid. The petition should have contained an allegation or allegations showing the non-payment of the notes and mortgages; to establish an affirmative right in the mortgagees to take immediate possession of the property without such statement or statements it was insufficient. There was a clause in each of the mortgages herein involved by which it was lawful for the mortgagee, if he at any

time should feel unsafe or insecure, to take immediate possession of the property; but in order to claim under this clause it would further be necessary that it should appear that the debt had not been paid; hence, as the petition lacked a statement that the debt was unpaid, the clause of each of the mortgages to which we have last referred could not be invoked as awarding effective claim to possession. To require that facts should have been pleaded which disclosed that the debts evidenced by the notes set up in the petition had not been paid is but enforcing the rule that a breach of the promise on which action is based should be shown in the petition. "The declaration ought to show a breach of the covenant, promise, etc., on which the action is founded." (6 Comyn, Digest, title "Pleader," C. 44.) It is the breach of the contract, and not the contract itself, that gives the right of action. (*Tracy v. Tracy*, 12 N. Y. Supp., 665; *Lent v. New York & M. R. Co.*, 130 N. Y., 504.)

We are not unmindful of, nor do we in the foregoing conflict with, the doctrine which has been often announced and was by this court stated in an opinion filed May 5 of this year in the case of *Ashland Land & Live Stock Co. v. May*, 51 Neb., 474, as follows: "The question of payment is a matter of defense which, to be available, the defendant is required to set up in the answer and establish on the trial." There is no conflict; the one is but requiring the pleader to show the breach or default, without which there would be no cause of action; the other exacting of a party who relies on payment or affirmative matter of defense to claim it,—plead and prove it.

In the decision in the case of *Lent v. New York & M. R. Co.*, *supra*, appears the following, which we approve: "It remains to consider the question whether, giving to the word 'entered' the interpretation that we have, the complaint states a cause of action. The effect of the recording of the order was to create a debt against the defendant, and in that respect its liability is analogous to a liability arising upon the maturity of a contract for the

payment of money, and the question is presented whether an allegation of non-payment is essential and material to the cause of action. The Code (section 481) provides that a complaint must contain a plain and concise statement of the facts constituting the cause of action, and the general rule deduced therefrom is that whatever facts are essential to be proven to entitle the plaintiff to recover upon the trial must be alleged in the complaint. It does not admit of controversy that, upon an ordinary contract for the payment of money, non-payment is a fact which constitutes the breach of the contract and is the essence of the cause of action, and, being such, within the rule of the Code it should be alleged in the complaint. It is said, however, that payment is always an affirmative defense, which must be pleaded to be available, and hence non-payment need not be alleged, as it is not a fact put in issue by a general denial. (*Salisbury v. Stinson*, 10 Hun [N. Y.], 242.) The rule that payment is an affirmative defense is not one embodied in the Code, but had its origin under the common-law practice in the plea of non-assumpsit; and the reason for it was that in assumpsit the allegation in the declaration and the traverse in the plea were in the past tense, and, under the rule which excluded all proof not strictly within the issue, no evidence was admissable except such as had a tendency to show that the defendant never had made the promise. It was never applied in the action of debt, the allegation in that form of action being in the present tense, and, under the plea of *nil debet*, any fact tending to show that there was no indebtedness on the part of the defendant was admissible. The history of the rule is set forth in Judge Seldon's opinion in *McKyring v. Bull*, 16 N. Y., 297, and need not be referred to here. Following the rule thus established under the former practice, the courts have uniformly held, since the adoption of the Code, that payment must be pleaded, and cannot be proven under the general issue. While the effect of these decisions is to modify somewhat the rule embodied in section 500 of

the Code, their tendency is to simplify pleading, as under their application the plaintiff is informed of the precise defense intended to be made, and thus unnecessary preparation is obviated and surprise on the trial avoided. But there is no need to further extend the rule and hold that, because payment as a defense must be pleaded, the breach of the agreement need not be alleged in the complaint. That would have the contrary effect, and lead to embarrassments that are avoided when the plain provisions of the Code are followed. No authority exists, so far as I am able to find, except the case of *Salisbury v. Stinson*, holding that a breach of the contract need not be pleaded, but all text writers and reported cases hold to the contrary. (1 Chitty, Pleading & Practice, pp. 325-359; 6 Comyn, Digest, title 'Pleader,' C. 44; 2 Wait, Law & Practice, p. 318; 1 Wait, Actions & Defenses, pp. 394, 395, and cases cited; *Witherhead v. Allen*, 4 Abb. Dec. [N. Y.], 628; *Tracy v. Tracy*, 12 N. Y. Supp., 665; *Van Giesen. v. Van Giesen*, 10 N. Y., 316; *Krower v. Reynolds*, 99 N. Y., 245.) *Witherhead v. Allen* arose upon a demurrer to a complaint. The opinion states the rule as follows: 'When the action is founded upon the contract obligation or duty of the defendant, the very gist and essence of the cause of action is the breach thereof by the defendant, and unless a breach is alleged no cause of action is shown.' In *Van Giesen v. Van Giesen*, 10 N. Y., 316, is is said: 'The material allegations of the complaint in this case are the making by the defendants of the promissory note, the transfer of it to the plaintiff, and the non-payment by the defendants. Each of them is material, for without the concurrence of all of them the complaint would not show a cause of action.' To the same effect is *Keteltas v. Myers*, 19 N. Y., 231. (See, also, Code, secs. 534, 1213, subdiv. 2.) In *Krower v. Reynolds* it was held, in an action on a covenant to pay a mortgage, that it was necessary to allege that the mortgage had not been paid, or that the defendant had failed to perform his covenant, and without such allegation the complaint was demurrable. And

in numerous cases, which need not be cited, but of which *Allen v. Patterson*, 7 N. Y., 476, is a type, the rule is recognized by implication, but the complaints were held good because of an allegation of indebtedness by the defendant to the plaintiff. This rule is further recognized in section 534 of the Code, which provides a simple form of pleading on an instrument for the payment of money only, but requires the plaintiff to state the sum which he claims to be due to him thereon.   *   *   *   It cannot be said that where the breach consists in non-payment of an agreed sum that it is not an issuable fact, because payment cannot be proven under general denial. The most that can be said is that that form of denial does not put that fact in issue, and to that extent the rule that payment must be pleaded must be deemed to modify the rule of pleading under the Code in reference to a general denial. But no reason is apparent how it can justify the omission from the complaint of a fact material to the plaintiff's cause of action, and essential to be proved to entitle the plaintiff to a judgment. Such facts, under the Code, must be pleaded. No presumption can be indulged in that a defendant has failed in his duty or omitted to perform his contract obligation. There was no allegation in the complaint in this action that the defendant had failed or omitted to pay the award, and no allegation of indebtedness, and without such no cause of action was stated."

The petition in the case at bar did not allege a breach of the promises, did not plead a default; hence, did not state a cause of action. No question of the sufficiency of the petition was raised or presented in the district court, but is made for the first time here, and we have not been unmindful of the rule that where the sufficiency of a petition is made the subject of objection for the first time after a trial of the cause, it must be liberally construed, and, if possible, sustained; but it is also true that if, when viewed in the light of the foregoing rule, the petition fails to state a cause of action, it will not sustain

a judgment.    We cannot turn to the affidavit in this case to aid the petition, for in the district court the petition in a suit of replevin is the basis of the action, and in jurisdictions where both petition and affidavit are used the petition cannot be aided in essential allegations by the affidavit.    (Cobbey, Replevin, sec. 598; *Wilhite v. Williams*, 21 Pac. Rep. [Kan.], 256.)

It is claimed that no undertaking was filed.    The facts in regard to this are that a bond was taken and approved by the coroner, who served the writ, the sheriff being a party to the action; but counsel for plaintiffs in error say in their brief that it was not signed by any one.    Counsel for defendants in error state that the parties to the bond signed it in the body and not at the close.    This we cannot determine, as we have a copy and not the original before us.    The bond was imperfect or defective in other particulars than the one to which we have just alluded. A motion was interposed for plaintiffs in error by which the court was asked to require the defendants in error to file a new and sufficient bond.    This motion seems to have been sustained; whether so or not does not appear from the record, but after it was filed the defendants in error furnished and caused to be filed a new bond.    This evidently was satisfactory, at least no further objections were made to the bonds.    Issues were joined and a trial had, in which the parties all participated.    It is too late, after the finding of the court and judgment on the merits, to further object to the bond.    (Cobbey, Replevin, sec. 695.)

As the judgment must be reversed and the cause remanded, probably for a new trial, we will not now discuss the evidence or the question of its sufficiency to sustain the finding and judgment of the trial court.

REVERSED AND REMANDED.