[File No. 5880.]

E. A. HUGHES, Respondent, v. ANNIE WACHTER, as Executrix of the Last Will and Testament of G. C. Wachter, Deceased, Appellant.

(238 N. W. 776.)

514

Opinion filed August 17, 1931.   Rehearing denied November 12, 1931.

*Dullam & Young,* for appellant.

*O'Hare, Cox & Cox,* for respondent.

BURR, J. The complaint alleges that on August 9, 1924 the plaintiff sold to G. C. Wachter "twenty shares of the capital stock of the Knife River Coal Mining Co., a corporation, at an agreed price of one hundred ($100) dollars per share and for which the said G. C. Wachter . . . agreed to pay . . . the sum of one hundred ($100) dollars per share, no part of which has been paid; . . ." that the said Wachter died and defendant qualified as his executrix; that the plaintiff presented to the defendant a claim for the said amount, to-wit: Exhibit "A" attached to "and made a part of the complaint;" that defendant rejected the claim and the rejection was approved by the county court. Exhibit "A" makes claim "to 40 shares of the capital

stock of the Knife River Coal Mining Company issued to G. C. Wachter, on the 9th day of August, 1924, at $100 per share . . . cost $4,000 . . . one-half of cost paid by E. A. Hughes, $2,000. To interest on $2,000 at the rate of 6% from August 9th, 1924 to May 1st, 1928. $477.33; . . . $2,477.33.

The answer admits the death of G. C. Wachter, and the qualification of the executrix; but otherwise is a general denial.

The defendant offered no testimony and plaintiff moved for a directed verdict which motion was resisted and denied. The jury found in favor of the defendant. The plaintiff then moved for judgment notwithstanding the verdict or for a new trial, which motion was granted and judgment entered in favor of the plaintiff with costs. From this judgment entered, the defendant appealed, alleging that the court erred in granting the plaintiff's motion for judgment notwithstanding the verdict; that the evidence is not sufficient to justify the granting of this motion; that the court erred in admitting Exhibits 1, 6 and 7; that the court erred in not sustaining objections to a specified question asked the witness C. B. Little and to a specified question asked the plaintiff.

The issue presented to us is whether the court was justified in granting the motion for judgment notwithstanding the verdict.

To sustain his cause of action the plaintiff was required to prove that he had some interest in at least twenty shares of stock of the Knife River Coal Mining Company together with the extent of this interest; and that he sold this interest in these twenty shares of this stock to the decedent at the agreed price of $100 per share. The appellant claims further that as the plaintiff alleged non-payment of this amount it was incumbent upon him to prove it.

Exhibit 1, received by the court, is the same as Exhibit "A" attached to "and made a part of this complaint." Appellant says the court erred in admitting this exhibit because the claim made therein differs so much from the claim sued upon as to cause a variance between the proof and the complaint. This exhibit 1, or exhibit "A," was verified by the plaintiff and presented to the county court. True the statements made therein differ somewhat from the statements made in the forepart of the complaint; but exhibit "A" is "made a part of the complaint," and therefore the complaint consists not only of the allegations

made in the main portion of the complaint,. but also the allegations set forth in Exhibit "A." To understand the nature of the complaint we must consider all portions thereof. Thus the allegations of the sale of twenty shares must be considered in the light of the other portion of the complaint as set forth in the exhibit, where it appears plaintiff is suing to recover for one-half of forty shares. Exhibit 1, or Exhibit "A" was offered by the plaintiff to show that the claim had been filed with the executrix, rejected by her, and the rejection approved by the county court. It was competent for this purpose. It is true the trial court, in his memorandum opinion accompanying the order for judgment notwithstanding the verdict, construes this verified claim as proof of plaintiff's ownership of the stock, but this feature will be discussed later.

It was necessary for the plaintiff to prove that the stock sold belonged to him. The only testimony in the record, on this feature, is the testimony of the witness C. B. Little and whatever probative value is attached to such portion of the books of the Knife River Coal Mining Company, as were introduced in evidence.

The witness Little testified that he and the plaintiff organized the Knife River Coal Mining Company; that about the time of the organization the two of them had a conference with G. O. Wachter wherein they told Mr. Wachter that if he would go to Beulah, where the company was operating, and manage the business, "we would give him a certain amount of stock in the company, to be paid for out of dividends; that if it was sold at any time he would not have to put up any cash, . . . and if he would go up and run the proposition we would allow him to take stock and pay for it in that manner; that he wouldn't have to put up any cash;" that Wachter was to be paid $300 a month for services and his expenses. "We offered him the $300 a month. and expenses and in addition to that we offered to sell him this stock." The witness said he thought it was forty shares and Wachter "was to pay just what we paid for it, which was par;" that Wachter "said that he would accept the offer;" that the stock sold was "stock that belonged to Mr. Hughes and myself," and that it was not treasury stock.

Plaintiff produced one T. H. Poole as a witness and he testified that under the instructions of the plaintiff he filled out a certificate

to the decedent for forty shares of stock, as well as filled out the stubs in the stub book.

One Kraft, an employee of the company, testified that he delivered this certificate of stock to the decedent and the decedent receipted therefor; that the signature of the decedent to the assignment on the back of the certificate was the signature of the decedent; and that this was an issue of new stock and his recollection was that plaintiff ordered him to deliver the certificate to the decedent.

The witness Poole further testified that under instructions of the plaintiff he directed the bookkeeper of the coal mining company to make an entry on the books of the company showing one-half of these forty shares as belonging to the plaintiff and the other half as belonging to the witness C. B. Little; and the bookkeeper testified that on October 31, 1924, more than two and a half months after the issuance of the certificate, he made such entry in the books of the company. Those entries Exhibits 6 and 7, were offered in evidence over the objection of the defendant that the books of account were incompetent, were not the books of Mr. Hughes; not the transactions of persons having relation to its regular business; that the entry was dated long subsequent to the account; and that the plaintiff could not prove an account against the decedent by the books of the coal mining company.

This is the sum total of the evidence showing plaintiff had any interest in the shares of stock sold to the decedent. Assuming that there is sufficient testimony on the part of the defendant Little to show that the shares of stock sold were the property of Little and Hughes and not the property of the coal mining company, it is clear there is no testimony showing what interest the plaintiff had in these forty shares of stock. We cannot tell from the testimony whether he had a 5 per cent interest or a 95 per cent interest. It is true that in the account filed with the executrix, and in exhibit "A" attached to the complaint, the plaintiff says one-half of the cost of the forty shares was paid by him, the plaintiff. Other than what appears in these exhibits there is no proof of this statement. No one testifies to the extent of the interest of the plaintiff. The trial court appeared to hold that because this claim filed with the executrix was verified by the plaintiff it had probative value showing the extent of his interest, and when introduced in evidence in this case was sufficient proof of the

extent of such interest, in the absence of contradiction. It is clear however, that the verification attached to that exhibit has no probative force in the trial of this case any more than the verification of the complaint. Such verification is required by statute in order to present a claim to the executrix; but cannot be accepted in this case as proof of the truth of the statements contained in the claim.

The court erred in admitting exhibits 6 and 7—the portions of the books of the Knife River Coal Mining Company aforementioned. The objection heretofore set out was good. The bookkeeper testified that under the directions of the witness Poole he made the entries showing one half of the stock charged to Mr. Hughes and one half charged to Mr. Little, and the witness Poole testified the plaintiff told him to have such entries made. These books were the records of one not a party to this suit. The purpose for which these entries were offered was not to show the deceased was a stockholder, or the condition of his stock account, or that he knew of and assented to the entries sought to be proved. For such a purpose they might have been admissible. See Turnbull v. Payson, 95 U. S. 418, 421, 24 L. ed. 437, 438. The purpose was to show a relationship between the plaintiff and the corporation, undoubtedly for the purpose of showing that the plaintiff owned twenty shares of stock at one time and to explain why the suit was for twenty shares though the certificate issued was for forty shares. While the evidence shows that at the time the entries were made the deceased held a certificate for forty shares of stock, and therefore would be classed as stockholder, yet a stockholder is not chargeable as such with actual knowledge of the business transactions of the corporation. See Rudd v. Robinson, 126 N. Y. 113, 12 L.R.A. 473, 22 Am. St. Rep. 816, 26 N. E. 1046. As to him this entry was purely hearsay. Our statute, § 7909, Comp. Laws, permits books of account to be introduced, under certain circumstances. This makes a limited exception to the rule regarding hearsay testimony. In dealings between the parties their books of entry are admissible if they comply with the requirements of the statute; but as said in the body of the New York case just cited (126 N. Y. 120) "Entries in the books of a corporation are no more evidence against the members than they are against strangers," and in Harrison v. Remington Paper Co. 3 L.R.A. (N.S.) 954, 72 C. C. A. 405, 140 Fed. 385, 5 Ann. Cas. 314, it is

shown that such entries are not evidence as against strangers. In Commercial Sav. Bank v. Kietges, 206 Iowa, 90, 219 N. W. 44, it is held that a "stockholder of corporation is not charged with actual knowledge of its business transactions merely because of his status as director or stockholder." For this reason these entries cannot be used as evidence against the deceased even though he had been a stockholder. There is nothing to show he knew of them and assented to them.

In addition, where entries in books are permitted, our statute, § 7909, Comp. Laws, requires that the entries be made contemporaneously with the transaction involved. The sale of the stock to the deceased was had on August 9, 1924 and the entries were not made until October 31, 1924. Thus entries showing that Mr. Hughes owned twenty shares of stock in October could not be evidence of a sale of this same stock in the preceding August.

However as the verdict of the jury was for the defendant the error in admitting these entries was harmless; but we determine this issue because it may be presented again in the further proceedings.

It is apparent from the record that plaintiff's contention, and the theory upon which the case was tried is, that though the stock was sold to the decedent, the decedent was not required to pay anything for it unless sufficient dividends were received to pay for the stock, or unless the stock was sold and then only the amount realized, but not to exceed the par value. As counsel for plaintiff stated to the trial court, in the argument over the introduction of evidence, "We refer again to the proof in this case as to the nature of the transaction between Mr. Wachter and Mr. Hughes, which was to the effect that the stock didn't need to be paid for out of cash at that time, but would be paid for out of the dividends or earnings, or the sale of the stock. Assuming then, that there must be dividends, earnings, or the sale of the stock, that being the agreement, we take the position that it is incumbent upon us to make the prima facie case that the stock was either sold or that there were dividends sufficient to pay it, and if it was sold under that agreement, we may show it was sold for a sufficient amount to pay what Mr. Wachter agreed to pay for it, which was two thousand dollars. I don't care for the exact figures here; but we do have to show, under our own interpretation of the case, how much was

received for the stock—at least that there was received in excess of two thousand dollars for it and interest."

This is plaintiff's interpretation of the testimony of the witness Little already referred to, wherein the witness said "We would give him (the decedent) a certain amount of stock in the company to be paid for out of dividends; that if it was sold at any time he wouldn't have to put up any cash." Thus the case shows the decedent was not to pay anything for the stock except what was realized from dividends, or unless the stock was sold. Before plaintiff can recover he must prove either that sufficient dividends were received to pay for the stock, or that the stock was sold and then the amount for which it was sold. If this amount was less than par value the decedent could not be required to pay more, and if it amounted to the par value or more the decedent would be required to pay the par value only. There was no evidence whatever offered in any way tending to show dividends. The only evidence offered to show sale of the stock is the assignment on the back of the certificate, shown to have been executed by the decedent, and the testimony of the son of the decedent. Through this latter witness the plaintiff attempted to prove that the stock was sold through the First National Bank and some amount paid therefor. This witness however would not testify that the stock was sold. However, he did testify that some amount was received, but that he did not receive this amount and he did not believe the executrix received it. When asked if a certain sum stated approximately, was received he said "No," but though the witness stated he knew approximately how much was received and could state it, he was not permitted to state the amount and did not state it, defendant's objection being sustained. The evidence should have been received as bearing upon the question of how much should be paid, if recovery is permitted.

In addition his testimony shows that while the father executed the assignment, and some money was received for the stock, no money was paid to his father; that the father died before any money came to the bank, and as to the draft at the First National Bank, "I believe if it was delivered it must have been delivered to my mother who was executrix of this estate," though he said also "I don't believe my mother received that money."

The record therefore is silent as to the amount received, even if the

stock was sold by the decedent, and therefore we do not know how much the decedent was required to pay for the stock even if it were sold.

Hence, it is clear the plaintiff has failed to prove two very essential points in his case—the extent of his interest in the stock sold; and the amount realized on the sale of the stock by the decedent (if such sale be proved) and, consequently the amount the decedent was to pay for the stock.

On the trial of the case witness Little was asked "Did Mr. Wachter, so far as you know, ever pay yourself or Mr. Hughes for this forty shares of stock in the Knife River Coal Mining Company?" The question was objected to as being incompetent, irrelevant and immaterial; and that the only issue in this lawsuit to be considered was "the stock alleged to be sold by Mr. Hughes to Mr. Wachter." The objection was overruled, and the witness answers "No." It was immaterial whether Wachter paid for stock bought from Mr. Little. It also may be considered immaterial what Mr. Little may have thought about the payment of stock from Mr. Hughes. He was asked if he knew of his own knowledge and he said he did not. Of course this was no proof of payment or non-payment; but the ruling, if error was harmless.

There is another matter which deserves consideration because of the possible effect in the future. The plaintiff alleged non-payment and attempted to prove it. To do this he was asked, over proper objection by the defendant, "Did, Mr. Wachter ever pay you for that stock referred to in his (Little's) deposition?" and answered "No." This question was clearly incompetent because it related to the transaction between the plaintiff and the decedent, and was asked of a party to such transaction when such party was not called by the opposite party. It was therefore in violation of the provisions of subdivision 2 of § 7871 of the Compiled Laws, which says: "Neither party shall be allowed to testify against the other as to any transaction whatever with or statement by the testator or intestate, unless called to testify thereto by the opposite party."

In Frink v. Taylor, 59 N. D. 47, 228 N. W. 459, we set forth the meaning of the word "transaction" and the extent of the term. Payment to the plaintiff for stock sold by him to the decedent was certainly

a part of the transaction sued upon, for the plaintiff was seeking to recover for the stock which he said he sold.

The court erred in granting the motion for judgment notwithstanding the verdict and therefore the judgment is reversed and the case remanded to the district court for a new trial.

CHRISTIANSON, Ch. J., and NUESSLE, BURKE and BIRDZELL, JJ., concur.

BURR, J. (On rehearing). The plaintiff asked for a rehearing to determine the questions of burden of proof as to payment and the status of the books of the corporation, and a re-hearing was granted.

It is claimed that non-payment need not be alleged, because payment is an affirmative defense.

The general rule is that non-payment must be alleged in the complaint where failure to pay is an essential element of the cause of action "as for example, in an action on a contract, the breach of which consists of non-payment." 48 C. J. 665. See also Lent v. New York & M. R. Co. 130 N. Y. 504, 29 N. E. 988, 989; Witherhead v. Allen, 4 Abb. App. Dec. 628; Van Giesen v. Van Giesen, 10 N. Y. 316; Keteltas v. Myers, 19 N. Y. 231.

It is true that we held in Gans v. Beasley, 4 N. D. 140, 155, 59 N. W. 714, 719, that where the complaint had attached to it a note and made the note a part of the complaint a specific allegation of non-payment is not necessary. This decision cites that of Keteltas v. Myers, supra, but in each case the note was made a part of the complaint; and the possession of the note is sufficient to show non-payment.

But there is also unanimity of opinion that payment is an affirmative defense and must be proved. See 48 C. J. 666; 21 R. C. L. 116.

This apparent contradiction arises because of the survival of the distinction in the old common law pleadings. The nature of the declaration or complaint determined the character of the answer. 1 Chitty, Pl. 16th ed. 610 et seq.; McKyring v. Bull, 16 N. Y. 297, 69 Am. Dec. 696. Under the reformed Code it was merely the "forms of pleadings heretofore existing" which were abolished and one form substituted for all. See § 7355, Comp. Laws. The requirements of pleading however were not changed. Plaintiff was still required to

set forth the necessary allegations to show he was entitled to the relief demanded, which included breach of the contract in whatever form it took, but the defendant was also required to prove anything which would discharge his obligation, in case an obligation was shown. In Robertson Lumber Co. v. State Bank, 14 N. D. 511, 516, 105 N. W. 719, 720, it is stated: "A defense of payment is an affirmative defense to be raised by answer." But this is in a case involved in the foreclosure of a lien where the question of payment was one within the knowledge of the defendant and a third party and not within the knowledge of the plaintiff.

Section 7440 of the Comp. Laws, requires the complaint to set forth "a plain and concise statement of the facts constituting a cause of action without unnecessary repetition." This does not in any way dispense with any of the material and necessary allegations which go to show that payment should be compelled. Hence it does not dispense with the necessity for the allegation of non-payment, for unless a complaint showed non-payment there would be no necessity for compelling the payment.

Thus the allegation of non-payment is necessary in the complaint under review, but the burden rests upon the defendant to prove payment. See also First Nat. Bank v. Warner, 17 N. D. 76, 84, 114 N. W. 1085, 17 Ann. Cas. 216.

Plaintiff says the defendant cannot be permitted to prove payment in this case because of the nature of her answer, it being in effect a general denial.

The complaint alleges non-payment, and with the exception of the admission of the death of G. C. Wachter and the appointment of the defendant as the executrix the answer is a general denial. This raises the question of whether payment can be proved under the general denial.

There is a difference of authority on this proposition, some holding that as payment is an affirmative defense it must be specially pleaded in order to be available. The rule that "it cannot be proved in a general denial" is set forth in Ann. Cas. 1912B, 487, note, as is also the contrary rule. See also 1 Enc. Pl. & Pr. 842; Wehle v. Butler, 12 Abb. Pr. N. S. 139; Lent v. New York & M. R. Co. 130 N. Y. 504, 29 N. E. 988, 989, supra; Hubler v. Pullen, 9 Ind. 273, 68 Am. Dec.

620; L. B. Menefee Lumber Co. v. MacDonald, 122 Or. 579, 260 Pac. 444; Hudelson v. First Nat. Bank, 51 Neb. 557, 71 N. W. 304, 308.

This matter however is largely a matter of statutory statement and construction.

Section 7448 says:

"The answer of the defendant must contain:

(1) A general or specific denial of each material allegation of the complaint controverted by the defendant, or of any knowledge or information thereof sufficient to form a belief.

(2) A statement of any new matter constituting a defense or counterclaim in ordinary and concise language without repetition."

Under this provision in our Code only "new matter" need be specially pleaded, as the general denial puts the material allegations of the complaint in issue.

Frisch v. Caler, 21 Cal. 71, 74, says: "It is not new matter to aver affirmatively the existence of the fact thus negatived in the complaint for obviously nothing new is brought into controversy." Davanay v. Eggenhoff, 43 Cal. 395, says: "a general denial in the answer puts in issue the fact of payment", as the complaint must allege non-payment in order to state a cause of action. In Brooks v. Ardizzone, 9 Cal. App. 215, 98 Pac. 393, 394, it is said: "While no plea of payment is presented by the answer, the right to prove the same exists in this state where the general isssue only is tendered." See also Mendocino County v. Johnson, 125 Cal. 337, 58 Pac. 5, 6; and McLarren v. Spalding, 2 Cal. 510, which says: "where such general denial is the equivalent of the plea of nil debit—payment—may be given in evidence." In Brown v. Forbes, 6 Dak. 273, 43 N. W. 93, the court held that under a general denial the defendant could prove payments other than those alleged in the complaint, because the general denial of the defendant put in issue the allegations of the complaint that only certain payment had been made. The court said that had the plaintiff sued on his contract, alleging performance of it and demanded payment, as he might have done, it would have been incumbent upon the defendant in his answer to have alleged payment in order to have permitted him to have proved such defense; but where a plaintiff sues for a balance, alleging certain payments and no others have been made he empowers the defendant by a general denial to have that state of

the account investigated, the extent to which the original payment has been reduced by payments ascertained, and the amount of the balance determined.

In Tolerton & W. Co. v. Sult, 33 N. D. 283, 288, 156 N. W. 939, this court held, in an action on an account, that the complaint "contained negative averments of non-payment which a denial, general or specific, would have put in issue;" and further stated therein, "A plea of payment is only necessary when it interposes new matter."

As pointed out in the California cases it is not "new matter" to affirm what is denied in the complaint. It is the same matter involving the same point—is the debt discharged by payment? The complaint says it is not, but though this is a negative statement the general denial denies the negative and the two negatives make a positive. Thus it is not "new matter" and therefore under the general denial may be proved.

"If an issue is formulated by the allegation of an amount due and the denial thereof, evidence tending to prove payment is admissible, though payment was not specially pleaded as a defense." Robertson v. Robertson, 37 Or. 339, 82 Am. St. Rep. 756, 62 Pac. 377.

That plaintiff may prove payment under a general denial is set forth in Marysville Development Co. v. Hargis, 41 Idaho, 257, 239 Pac. 522; State ex rel. Spaulding v. Peterson, 142 Mo. 526, 39 S. W. 453, 40 S. W. 1094; Ball v. Putnam, 123 Cal. 134, 55 Pac. 773, 775; Brenton Bros. & Leach v. Hill, 197 Iowa, 125, 196 N. W. 947; Jones v. El Reno Mill & Elevator Co. 26 Okla. 796, 110 Pac. 1071, Ann. Cas. 1912B, 486; Knapp v. Roche, 94 N. Y. 329; Parker v. Mayes, 85 S. C. 419, 137 Am. St. Rep. 912, 67 S. E. 559.

Plaintiff contends that the holding with reference to the books of the corporation and their admissibility in evidence is too broad, and if carried to its logical conclusion will shut them out for any purpose.

We were passing upon the reception of the books for the purpose for which they were offered, and no other. Plaintiff says it is conceivable a situation may arise in the new trial whereby such books may be received. We are not passing upon such a situation, nor do we hold that under no circumstances can the books be received.

With these additions, treating of the questions raised on the rehearing, the original opinion is confirmed.

CHRISTIANSON, Ch. J., and NUESSLE, BIRDZELL and BURKE, JJ., concur.