**SULLIVAN, Admrx. v SULLIVAN et**

Ohio Appeals, 1st Dist, Hamilton Co.

No. 5866.  Decided Dec. 2, 1940.

Dolle, O'Donnell & Cash, Cincinnati, for appellee.

Maxwell & Ramsey, Cincinnati, and Nichols, Wood, Marx & Ginter, Cincinnati, for appellants.

## OPINION

By MATTHEWS, J.

Frances Sullivan Linderman, by her will, gave to her son, John E. Sullivan, all her interest in the undertaking business carried on under the name of J. J. Sullivan & Company, "subject, however, to the payment of all my debts and the payment to my son, Edward J. Sullivan, of the sum of $10,000.00 which shall be paid by my said son, John E. Sullivan to Edward J. Sullivan at such times and in such amounts, without interest, as my said son, John E. Sullivan may deem best, leaving it entirely to the discretion of my said son, John E. Sullivan when and how such payments shall be made, but said amount shall be fully paid within ten years from the date of my demise."

Frances Sullivan Linderman died on July 10th, 1925, and her will was probated shortly thereafter.

John E. Sullivan accepted the bequest and became charged with the obligation of paying to his brother Edward J. Sullivan, the sum of $10,000.00.

Edward J. Sullivan became incompetent and his wife, Irene H. Sullivan was appointed his guardian in 1926. He died in 1931, and Irene H. Sullivan, the plaintiff, was appointed administratrix of his estate.

John E. Sullivan died on the 19th day of June, 1936, and the defendants are the executors of his last will and testament.

In November, 1936, the plaintiff presented a duly verified claim for $5336.40 to the defendants, as executors, as the unpaid balance of the charge of $10,-000.00, which John E. Sullivan assumed and became bound to pay by accepting the bequest aforesaid. The claim was rejected and this action was instituted in due time.

The defendants pleaded payment of all excepting $330.00, for which amount they offered to confess judgment.

The issue of payment was submitted to a jury. It returned a verdict for $4238.32, for which amount judgment was rendered.

This is an appeal from that judgment.

Various errors are assigned as prejudicial to the appellants and as requiring a reversal of the judgment and a new trial, or a modification of the judgment by reducing the amount thereof. We will consider these assignments.

(1) In the petition it is alleged that "John E. Sullivan, pursuant to the provisions of said Item 4, paid from 1926 to the date of his death the sum of $4663.60 and no more to the said Edward J. Sullivan, the party mentioned in said Item 4, or his guardian", and that "there is due plaintiff" the sum of $5336.40 with interest. It is pointed out that the period covered by the admitted payments does not include the entire decade within which John E. Sullivan was bound to pay the $10,-000.00, and, therefore, does not exclude the possibility of the entire balance having been paid during the unincluded time within which he could have made the payments according to the terms of the bequest. This analysis of

the allegations of the petition, of course, ignores the negation of additional payments by the averment that the balance is due.

The broad claim is that it was necessary for the plaintiff to allege non-payment in order to state a cause of action and that, therefore, the burden of proof of non-payment rested upon the plaintiff and that the court erred in placing the burden of proving payment upon the defendants.

It may be that non-payment may be such an integral part of a cause of action, that in order to show the existence of a cause it is necessary for the plaintiff to affirmatively allege the payments, if any, that have been made. In such a case the burden would be upon the plaintiff to prove the payments in order to show the cause of action for the unpaid amount. 21 R. C. L. 119, Hughes v Wochter, 61 N. D. 513, 238 N. W. 776, 100 A. L. R., 255, 31 O. Jur. 254 et seq. But where as in this case, the obligation exists independently of payments, and an allegation of the legal conclusion that the amount prayed for is due upon such obligation, will satisfy the requirement of pleading a cause of action, payment is an affirmative defense of confession and avoidance, which must be pleaded and proven by the defendant.

In the case at bar, John E. Sullivan became obligated to pay this $10,000.00 immediately upon accepting the benefit of the bequest charged with this burden, notwithstanding it was not due and payable until the expiration of ten years. The cause of action arose on the expiration of ten years, without demand or any other act on the part of the payee. It is analogous to a promissory note payable on or before a certain date, the obligation of which may be discharged at any time, but is not required to be discharged until the expiration of the period.

It was not necessary for the plaintiff to make any mention of payments during the ten year period, in order to state a cause of action. She might not have been possessed of sufficient knowledge to safely admit any payment, although possessed of some knowledge upon the subject. The fact that she did consider it safe to admit some payments does not change the fact that it would have been sufficient to satisfy the rules of pleading for her to allege generally that there was due the amount of the original obligation. Nor does it change the burden of proof.

The case of **Alperin v Feldman, 14 Abs 723,** cited by counsel is in harmony with this statement. This is also true of the case of **Worst v Bank & Trust Co., 11 Oh Ap 308.**

We conclude on this point that the court did not err in holding that the petition stated a cause of action and that the burden of proving payment was upon the defendants.

(2) The next contention is, that regardless of where the burden rested, the uncontradicted evidence shows that this obligation was discharged to the extent claimed by the defendants. The plaintiff denies this. The validity of the defendants' claim depends upon the probative effect of certain documents in the form of checks, found by the executors in the safe-deposit box of John E. Sullivan after his death. The evidence is clear that John E. Sullivan drew these checks. They are in his handwriting and are signed by him. They are for the aggregate amount of $3371.50, payable to Edward J. Sullivan, and drawn upon The Fifth-Third National Bank. They each bear the endorsement of Edward J. Sullivan, in his handwriting. It is admitted that none was ever presented to or paid by the drawee. There is no evidence that their preparation or endorsement had any relation to the obligation imposed upon John E. Sullivan by his acceptance of this bequest. Notwithstanding this, it is claimed that their possession by John E. Sullivan is prima facie evidence of a part payment of this obligation as a matter of law. To accomplish this result, reliance is placed upon §§8121 and 8124 GC, relating to negotiable instruments. By §8121 GC, it is enacted that, "When the instrument is no longer in the possession of

a party whose signature appears thereon, a valid and intentional delivery by him is presumed until the contrary is proven", and by §8124 GC: "A negotiable instrument is discharged * * * (5) when the principal debtor becomes the holder of the instrument at or after maturity in his own right."

It can be conceded that these checks in the possession of John E. Sullivan represented neither a debt nor the evidence of a debt owing by him. If they ever were operative as such, the obligation ran in favor of Edward J. Sullivan against John E. Sullivan, and their unexplained possession by the obligor would be sufficient evidence that the obligation no longer existed. But the plaintiff is making no such claim—just the contrary. This is not an action to enforce any obligation created by these checks.

Notwithstanding these checks are neither debts nor evidence of debts, like every other writing, they continued to exist for the purpose of such probative value as they possessed. The real question, therefore, is, what do these writings, endorsed by Edward J. Sullivan, in the possession of John E. Sullivan, tend to prove? Do they tend to prove that Edward J. Sullivan obtained the money for which they were drawn in the manner expressed? Manifestly not, because it is admitted that they were never presented to or paid by the drawee.

Do they have the force of receipts? They carry no such language. They are orders for money to be paid by the drawee, and the drawee did not pay. How can language, which under the circumstances disproves payment in the only way authorized, have any tendency to prove payment in some other way? Only the surrounding circumstances could give significance to these checks —and the circumstances are unknown.

We are of the opinion that these checks have no tendency to prove payment upon any obligation, and, as there is no evidence that they were drawn to apply on the obligation sued on, for that additional reason, they have no tendency to prove payment on it.

(3) The defendants offered in evidence a letter written by Irene H. Sullivan, in which she stated that she found a balance of $592.67 due as against $417.80, admitted by the defendants. This letter was written after Edward J. Sullivan had died, but before Irene H. Sullivan had filed her final account as his guardian, and before she had been appointed administratrix of his estate.

Assuming that Irene H. Sullivan had all the authority of a guardian, notwithstanding the death of the ward, still she would lack the power to bind the estate of the ward by her admission. 25 Am. Jur. 66. And her subsequent appointment as Administratrix would not make admissible a statement incompetent at the time it was made. The inadmissibility of this letter is supported by the reasoning in the case of **Hueston v Hueston, 2 Oh St 489.**

It appears that the material part of this letter was admitted and we find no error in the exclusion of the remainder.

Furthermore, this Court would not be justified in disturbing the finding of the trial court that this letter had no probative value in view of the testimony of the writer that she had no personal knowledge of the subject.

(4) A book was tendered in evidence, in which it appeared that John E. Sullivan made entries showing payments to Edward J. Sullivan and his guardian, and to others on his behalf. The entries are in the handwriting of John E. Sullivan and cover a period of several years. The evidence of the circumstances under which the entries were made was somewhat vague, but it appears that the book was one relating to the personal affairs of John E. Sullivan, in which he made entries from time to time. The court excluded this book, and this is assigned as error. It is claimed that this book is made competent by §12102-23 GC, by which it is provided that:

"A record of an act, condition or event, shall, in so far as relevant, be competent evidence if the custodian or the person who made such record or

under whose supervision such record was made testifies to its identity and the mode of its preparation, and if it was made in the regular course of business, at or near the time of the act, condition or event, and if, in the opinion of the court, the sources of information, method and time of preparation were such as to justify its admission."

It will be observed that to render a record competent it must be made "in the regular course of business". These entries did not relate to any business, as that term is defined in §12102-22 GC. They related to an isolated transaction of a personal nature, entirely distinct from any business. All the entries purport to show payment of sums of money. Such payments have never been regarded as the proper objects of a personal book-account at common law. 17 O. Jur. 677.

We are of opinion that the court did not abuse its discretion in excluding these entries.

(5) We have examined the other assignments—admission of negative evidence, the charge of the court, reference in argument to statute of limitations relating to bringing a will contest—and are of the opinion that no error, prejudicial to the appellants, is disclosed by the record.

For these reasons, the judgment is affirmed.

HAMILTON, PJ. & ROSS, J., concur.